IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on September 30, 2004

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Criminal No. |
| | : | |
| | : | Grand Jury Original |
| v. | : | |
| | : | VIOLATIONS: |
| | : | |
| **RICARDO HENRY,** | : | 18 U.S.C. § 1347 |
| | : | (Health Care Fraud); |
| Defendant | : | 18 U.S.C. § 1035 |
| | : | (False Statements Regarding |
| | : | Health Care Matters); |
| | : | 18 U.S.C. § 2 |
| | : | (Causing an Act to be Done) |
| | : | and |
| | : | 18 U.S.C. § 982(a)(7) and (b)(1) |
| | : | (Criminal Forfeiture) |

## INDICTMENT

The Grand Jury charges that:

At all times material to this Indictment:

Medicaid

1. Medicaid was a government sponsored health insurance program for eligible low-income and needy individuals, such as children and the disabled.

2. Medicaid was financed jointly with federal and District of Columbia funds.

3. In the District of Columbia, the Department of Health Medical Assistance Administration (hereinafter referred to as "MAA") administered the Medicaid program.

4. MAA contracted initially with a company called First Health, and later with a company called ACS, Inc., to process and pay claims submitted by Medicaid providers.

5. Because it was a public plan or contract, affecting commerce, under which medical insurance benefits, items and services were provided to individuals, Medicaid was a "health care benefit program" as defined in 18 United States Code, Section 24(b).

<u>Free Standing Mental Health Clinic</u>

6. A "free standing mental health clinic" (sometimes referred to hereinafter as "FSMHC") was defined, in pertinent part, by Title 29 District of Columbia Municipal Regulations, section 899, as a "formally organized psychiatric clinic furnishing psychiatric services . . . but organized and operated to provide mental health services on an outpatient basis . . .."

7. Title 29 District of Columbia Municipal Regulations, section 805, required that "[i]n order to ensure that the treatment provided and paid for with Medicaid funds is of the highest quality and fully meets all standards for Medicaid reimbursement, each participating FSMHC shall maintain Medicaid patient records and individualized treatment plans in a manner that will render them amenable to audit and review by authorized federal, state, and DHS mental health and Medicaid personnel."

8. Title 29 District of Columbia Municipal Regulations, sections 806.1 and 806.2, required that "[a]ll phases of the patient's program, and related information, shall be entered in the record [of a FSMHC]. The medical records shall include, but are not limited to, the following, in pertinent part:

> (e) Periodic interdisciplinary reviews, at intervals not to exceed three (3) months, regarding the care, treatment, and progress of the patient to ensure that all appropriate measures are taken for the patient's improvement and that continued treatment is necessary. These

reviews shall include a substantive evaluation of the treatment plan. The patient's continuing need for treatment shall be clearly documented;

(f) Brief progress notes, to be written by the mental health professional responsible for carrying out the treatment plan and entered at least monthly;

(g) Summary of significant, face-to-face contact by mental health professionals with the patient sufficient to readily identify and support Medicaid billing; and

(h) Each record entry shall show the signature, discipline, and date entered."

9. Under the applicable fee schedule, amended on April 26, 2001, FSMHCs were reimbursed $58.50 for a 45-50 minute period of mental health therapy for an individual adult patient. The schedule also provided for "Family Therapy," under which FSMHCs were reimbursed $54 per session, regardless of the number of patients in the session. Moreover, the fee schedule provided for "Group Therapy," under which FSHMCs were reimbursed $36 per patient in the group for a maximum of 8 patients, or $288, provided that the session was 85-90 minutes long. For a 50-60 minute session, an FSMHC was entitled only to $27 per patient. For an FSHMC to bill using "Group Therapy," the patients in the group could not be family members.

<u>Insight</u>

10. Insight Therapeutic Services, Inc. ("Insight") was a free standing mental health clinic which had its office at 733 15th Street, N.W., Suite 700, Washington, D.C.

11. Defendant RICARDO HENRY was the President, CEO, Secretary and Treasurer of the Insight. Defendant RICARDO HENRY also would provide therapy to some patients.

12. Insight provided psychological services to patients eligible for Medicaid in the District of Columbia. Those who provided the psychological services were known as therapists or clinicians,

some of whom were licensed social workers.

13. Insight submitted claims to Medicaid through MAA for psychological services provided to adults and children.

## COUNT ONE

## (HEALTH CARE FRAUD)

14. From on or about October 20, 1999, and continuing until on or about August 30, 2002, within the District of Columbia and elsewhere, Defendant RICARDO HENRY willfully and knowingly devised, and intended to devise, a scheme and artifice to defraud Medicaid of money.

### Purpose of the Scheme and Artifice

15. It was a purpose of the scheme and artifice that Defendant RICARDO HENRY would obtain money fraudulently from Medicaid which he would use for his own benefit.

### The Scheme

16. It was a part of the scheme and artifice that Defendant RICARDO HENRY would represent himself to have received a Ph.D. degree even though he had not yet received a Ph.D. degree.

17. It was a part of the scheme and artifice that Defendant RICARDO HENRY would inform the therapists that they should visit patients one time every two weeks but cause false claims to be submitted to Medicaid seeking reimbursement for services claimed to have been provided to those patients more than twice per month.

18. It was a part of the scheme and artifice that, in addition to obtaining the Medicaid identification numbers for patients referred to Insight who were eligible for Medicaid, Defendant

RICARDO HENRY also would obtain Medicaid identification numbers for family members of the patients who were not themselves patients, and then cause false claims to be submitted to Medicaid seeking reimbursement for services claimed to have been provided to the family members.

19. It was a part of the scheme and artifice that Defendant RICARDO HENRY would establish office procedures at Insight so that patient files and progress notes were kept away from the billing clerk so that the billing clerk had no ability to compare the bills she submitted to Medicaid with the patient files and progress notes.

20. It was a part of the scheme and artifice that Defendant RICARDO HENRY would direct the activity of the billing clerk regarding claims sent to Medicaid.

21. It was a part of the scheme and artifice that Defendant RICARDO HENRY would cause false and fraudulent claims to be sent to Medicaid for patients whose relationship with Insight had been terminated and to whom the claimed services had not been provided. Such patients include, for example and among others: JM-083, CC-037, and LR-333.

22. It was a part of the scheme and artifice that Defendant RICARDO HENRY would cause false and fraudulent claims to be sent to Medicaid in the name of a patient's family member even though only the patient, and not the family member, had been provided service by Insight. Such family members include, for example and among others: JM-016, CM-021, YM-598, MM-068, DM-388, QS-915, CS-251, JS-481, RB-441, AW-284, IW-049, AW-311, BR-469, SR-000, and AC-798.

23. It was a part of the scheme and artifice that Defendant RICARDO HENRY would cause false and fraudulent claims to be sent to Medicaid for dates on which service for a patient

had been cancelled. Such patients include, for example and among others: MW-723, PW-743, JM-083, and BW-693.

24. It was a part of the scheme and artifice that Defendant RICARDO HENRY would cause false and fraudulent claims to be sent to Medicaid for dates on which no service had been provided to a patient. Such patients include, for example and among others: SB-948, JM-083, MW–723, and JS-500.

25. It was part of the scheme and artifice that Defendant RICARDO HENRY would cause false and fraudulent claims to be sent to Medicaid requesting payment for services purportedly rendered to various patients more often than twice per month, even though he instructed the therapists to visit those patients one time every two weeks. Such patients include, for example and among others: SB-948, CW-243, BW-693, PW-743, MW-723, and CC-037.

26. It was part of the scheme and artifice that Defendant RICARDO HENRY would cause claims to be sent to Medicaid using the "Group Therapy" code even though that code should not have been used, thereby inflating the amount Medicaid paid to Insight. Such patients include, for example and among others: JM–083, JM-016, MM-068, CM-021, YM-598, DM-388, SB-948, JS-500, JS-481, CS-251, QS-915, PW-743, MW-723, IW-049, AW-284, AW-311, AC-798, CC-037, SR-000, BR-469.

27. From on or about April 1, 2001, and continuing until on or about August 30, 2002, in the District of Columbia, and elsewhere, Defendant RICARDO HENRY knowingly and willfully did execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program, namely, Medicaid, and to obtain, by means of false and fraudulent pretenses, representations, and promises, namely, Medicaid reimbursement claims, money owned by and

under the custody and control of a healthcare benefit program, namely, Medicaid, in connection with the delivery of, and payment for, health care benefits, items and services.

**(Health Care Fraud, and Causing an Act to be Done,
in violation of Title 18, United States Code, Sections 1347 and 2.)**

### COUNTS TWO THROUGH SIXTY-TWO

### (FALSE STATEMENTS REGARDING HEALTH CARE MATTERS)

28. Paragraphs 1 through 26 are realleged and incorporated as though fully set forth herein.

29. As examples of false claims submitted in the scheme alleged, on or about the dates and for the persons enumerated below, within the District of Columbia, in a matter relating to a health care benefit program, that is Medicaid, the Defendant RICARDO HENRY, did knowingly and willfully make, and cause to be made, materially false, fictitious and fraudulent statements and representations, that is, Medicaid reimbursement claims, when, as Defendant RICARDO HENRY well knew, such claims were false, fictitious and fraudulent, in that the claimed services had, in fact, not been performed as alleged for each count below:

**FALSE CLAIMS SUBMITTED AFTER TERMINATING PATIENTS (PARAGRAPH 21)**

| COUNT | DATE | PATIENT |
| --- | --- | --- |
| TWO | 4/5/2001 | JM-083 |
| THREE | 4/26/2001 | JM-083 |
| FOUR | 4/10/2001 | LR-333 |
| FIVE | 4/17/2001 | LR-333 |
| SIX | 4/6/2001 | CC-037 |
| SEVEN | 11/2/2001 | CC-037 |

**FALSE CLAIMS FOR FAMILY MEMBERS NOT TREATED (PARAGRAPH 22)**

| COUNTS | DATE | PATIENT |
| --- | --- | --- |
| EIGHT | 4/3/2001 | JS-481 |
| NINE | 11/5/2001 | JS-481 |
| TEN | 4/3/2001 | CS-251 |
| ELEVEN | 11/5/2001 | CS-251 |
| TWELVE | 4/3/2001 | QS-915 |
| THIRTEEN | 11/5/200 | QS-915 |
| FOURTEEN | 4/3/2001 | AW-284 |
| FIFTEEN | 8/30/2002 | AW-284 |
| SIXTEEN | 4/3/2001 | IW-049 |
| SEVENTEEN | 8/30/02 | IW-049 |
| EIGHTEEN | 4/3/2001 | AW-311 |
| NINETEEN | 7/5/2002 | AW-311 |
| TWENTY | 4/3/2001 | BR-469 |
| TWENTY-ONE | 11/5/2001 | BR-469 |
| TWENTY-TWO | 4/3/2001 | SR-000 |

| TWENTY-THREE | 11/5/2001 | SR-000 |
| --- | --- | --- |
| TWENTY-FOUR | 4/6/2001 | AC-798 |
| TWENTY-FIVE | 11/2/2001 | AC-798 |

**FALSE CLAIMS FOR CANCELLED SESSIONS (PARAGRAPH 23)**

| COUNT | DATE | PATIENT |
| --- | --- | --- |
| TWENTY-SIX | 4/6/2001 | BW-693 |
| TWENTY-SEVEN | 4/20/2001 | BW-693 |
| TWENTY-EIGHT | 8/27/2001 | CW-243 |
| TWENTY-NINE | 7/9/2001 | MW-723 |
| THIRTY | 7/9/01 | PW-743 |

**FALSE CLAIMS WHEN NO SERVICES RENDERED (PARAGRAPH 24)**

| COUNT | DATE | PATIENT |
| --- | --- | --- |
| THIRTY-ONE | 7/23/2001 | IW-049 |
| THIRTY-TWO | 7/23/2001 | MW-723 |
| THIRTY-THREE | 8/13/2001 | IW-049 |
| THIRTY-FOUR | 8/13/2001 | MW-723 |

**FALSE CLAIMS SUBMITTED MORE THAN TWICE PER MONTH (PARAGRAPH 25)**

| COUNT | DATE | PATIENT |
| --- | --- | --- |
| THIRTY-FIVE | 2/19/2002 | BW-693 |
| THIRTY-SIX | 5/9/2002 | BW-693 |
| THIRTY-SEVEN | 6/15/2001 | CW-243 |
| THIRTY-EIGHT | 10/8/2001 | CW-243 |
| THIRTY-NINE | 4/3/2001 | MW-723 |
| FORTY | 5/24/2002 | MW-723 |
| FORTY-ONE | 4/3/2001 | PW-743 |
| FORTY-TWO | 6/21/2002 | PW-743 |
| FORTY-THREE | 4/6/2001 | CC-037 |
| FORTY-FOUR | 10/26/2001 | CC-037 |

**FALSE CLAIMS FOR "GROUP THERAPY" (PARAGRAPH 26)**

| COUNT | DATE | PATIENT |
| --- | --- | --- |
| FORTY-FIVE | 4/24/2001 | PW-743 |
| FORTY-SIX | 4/24/2001 | MW-723 |
| FORTY-SEVEN | 4/24/2001 | IW-049 |
| FORTY-EIGHT | 4/24/2001 | AW-284 |
| FORTY-NINE | 4/24/2001 | AW-311 |
| FIFTY | 9/7/2001 | AC-798 |
| FIFTY-ONE | 9/7/2001 | CC-037 |
| FIFTY-TWO | 5/1/2001 | CS-251 |
| FIFTY-THREE | 5/1/2001 | JS-500 |
| FIFTY-FOUR | 5/1/2001 | JS-481 |
| FIFTY-FIVE | 5/1/2001 | QS-915 |

| | | |
|---|---|---|
| FIFTY-SIX | 5/15/2001 | SR-000 |
| FIFTY-SEVEN | 5/15/2001 | BR-469 |
| FIFTY-EIGHT | 8/23/2001 | JM-016 |
| FIFTY-NINE | 8/23/2001 | MM-068 |
| SIXTY | 8/23/2001 | CM-021 |
| SIXTY-ONE | 8/23/2001 | YM-598 |
| SIXTY-TWO | 8/23/2001 | DM-388 |

**(False Statements Relating to Health Care Matters, in Violation of Title 18, United States Code, Sections 1035 and 2)**

**FORFEITURE ALLEGATION UNDER 18 U.S.C. § 982(a)(7)**

30. The violations alleged in Counts One through Sixty-Two of this Indictment are realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982(a)(7).

31. As a result of the offenses alleged in Counts One through Sixty-Two of this Indictment, the defendant, RICARDO HENRY, shall forfeit to the United States property constituting or derived, directly or indirectly, from gross proceeds traceable to the commission of health care fraud, in violation of Title 18, United States Code, Section 1347; and false statements regarding health care matters, in violation of Title 18, United States Code, Section 1035(a)(2), including, but not limited to:

United States Savings Bonds

(a) One $1,000 United States Savings Bond bearing serial number 0003741367, payable to Ricardo Henry;

(b) One $1,000 United States Savings Bond bearing serial number 0003741368, payable to Ricardo Henry;

    (c)    One $1,000 United States Savings Bond bearing serial number 0003741369, payable to Ricardo Henry;

    (d)    One $1,000 United States Savings Bond bearing serial number 0003741370, payable to Ricardo Henry;

    (e)    One $1,000 United States Savings Bond bearing serial number 0003741371, payable to Ricardo Henry;

    (f)    One $1,000 United States Savings Bond bearing serial number 0003741372, payable to Ricardo Henry;

    (g)    One $1,000 United States Savings Bond bearing serial number 0003741373, payable to Ricardo Henry;

    (h)    One $1,000 United States Savings Bond bearing serial number 0003741374, payable to Ricardo Henry;

    (i)    One $1,000 United States Savings Bond bearing serial number 0003741375, payable to Ricardo Henry;

    (j)    One $1,000 United States Savings Bond bearing serial number 0003741376, payable to Ricardo Henry.

<u>Money Judgment:</u>

    (k)    A sum of money equal to the total amount of property constituting or derived, directly or indirectly, from gross proceeds traceable to the commission of health care fraud, in violation of 18 U.S.C. § 1347; and false statements regarding health care matters, in violation of 18 U.S.C. § 1035(a)(2), Fed. R. Crim. P. 32.2(b)(1).

By virtue of the commission of felony offenses charged in Counts One through Sixty-Two of this Indictment, any and all interest that the defendant has in property constituting or derived, directly or indirectly, from gross proceeds traceable to the commission of health care fraud, in violation of Title 18, United States Code, Section 1347; and false statements regarding health care matters, in violation of Title 18, United States Code, Section 1035(a)(2); is vested in the United States and hereby forfeited to the United States, pursuant to Title 18, United States Code, Section

982(a)(7).

32. If any of the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(7), as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property that cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of other property of said defendant up to the value of said property listed above as being subject to forfeiture.

**(Criminal Forfeiture, in violation of Title 18, United States Code, Section 982(a)(7); Title 18, United States Code, Section 982(b)(1))**

A TRUE BILL:

FOREPERSON

ATTORNEY OF THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA

13