**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Holding a Criminal Term**
**Grand Jury Sworn in on May 11, 2006**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Criminal No. 1:06-CR-00079-CKK** |
| | : | |
| | : | |
| **v.** | : | |
| | : | **VIOLATIONS:** |
| | : | |
| **RICARDO HENRY,** | : | **18 U.S.C. § 1347** |
| | : | **(Health Care Fraud);** |
| **Defendant** | : | **18 U.S.C. § 1035** |
| | : | **(False Statements Regarding** |
| | : | **Health Care Matters);** |
| | : | **18 U.S.C. § 2 (Causing an Act to be** |
| | : | **Done);** |
| | : | **18 U.S.C. § 157 (Bankruptcy** |
| | : | **Fraud);** |
| | : | **18 U.S.C. § 152 (Concealment of** |
| | : | **Assets;  False Oaths and Claims);** |
| | : | **18 U.S.C. 1956 (Money Laundering);** |
| | : | **and** |
| | : | **18 U.S.C. § 982(a)(7) and** |
| | : | **(b)(1) (Criminal Forfeiture)** |

<u>**SECOND SUPERSEDING INDICTMENT**</u>

The Grand Jury charges that:

At all times material to this Indictment:

<u>Medicaid</u>

1.  Medicaid was a government sponsored health insurance program for eligible low-income and needy individuals, such as children and the disabled.

2.  Medicaid was financed jointly with federal and District of Columbia funds.

3.  In the District of Columbia, the Department of Health Medical Assistance Administration (hereinafter referred to as "MAA") administered the Medicaid program.

4.  MAA contracted initially with a company called First Health, and later with a company called ACS, Inc., to process and pay claims submitted by Medicaid providers.

5.  Because it was a public plan or contract, affecting commerce, under which medical insurance benefits, items and services were provided to individuals, Medicaid was a "health care benefit program" as defined in 18 United States Code, Section 24(b).

<u>Free Standing Mental Health Clinic</u>

6.  A "free standing mental health clinic" (sometimes referred to hereinafter as "FSMHC") was defined, in pertinent part, by Title 29 District of Columbia Municipal Regulations, section 899, as a "formally organized psychiatric clinic furnishing psychiatric services . . . but organized and operated to provide mental health services on an outpatient basis . . .."

7.  Title 29 District of Columbia Municipal Regulations, section 805, required that "[i]n order to ensure that the treatment provided and paid for with Medicaid funds is of the highest quality and fully meets all standards for Medicaid reimbursement, each participating FSMHC shall maintain Medicaid patient records and individualized treatment plans in a manner that will render them amenable to audit and review by authorized federal, state, and DHS mental health and Medicaid personnel."

8.  Title 29 District of Columbia Municipal Regulations, sections 806.1 and 806.2, required that "[a]ll phases of the patient's program, and related information, shall be entered in the record [of a FSMHC] . The medical records shall include, but are not limited to, the following, in pertinent part:

(e) Periodic interdisciplinary reviews, at intervals not to exceed three (3) months, regarding the care, treatment, and progress of the patient to ensure that all appropriate measures are

taken for the patient's improvement and that continued treatment is necessary. These reviews shall include a substantive evaluation of the treatment plan. The patient's continuing need for treatment shall be clearly documented;

(f) Brief progress notes, to be written by the mental health professional responsible for carrying out the treatment plan and entered at least monthly;

(g) Summary of significant, face-to-face contact by mental health professionals with the patient sufficient to readily identify and support Medicaid billing; and

(h) Each record entry shall show the signature, discipline, and date entered."

9. Under the applicable fee schedule, amended on April 26, 2001, FSMHCs were reimbursed $58.50 for a 45-50 minute period of mental health therapy for an individual adult patient. The schedule also provided for "Family Therapy," under which FSMHCs were reimbursed $54 per session, regardless of the number of patients in the session. Moreover, the fee schedule provided for "Group Therapy," under which FSHMCs were reimbursed $36 per patient in the group for a maximum of 8 patients, or $288, provided that the session was 85-90 minutes long. For a 50-60 minute session, an FSMHC was entitled only to $27 per patient. For an FSHMC to bill using "Group Therapy," the patients in the group could not be family members.

Insight

10. Insight Therapeutic Services, Inc. ("Insight") was a free standing mental health clinic which had its office at 733 15th Street, N.W., Suite 700, Washington, D.C.

11. Defendant RICARDO HENRY was the President, CEO, Secretary and Treasurer of the Insight. Defendant RICARDO HENRY also would provide therapy to some patients.

12. Insight provided psychological services to patients eligible for Medicaid in the District

of Columbia.   Those who provided the psychological services were known as therapists or clinicians, some of whom were licensed social workers.

13. Insight submitted claims to Medicaid through MAA for psychological services provided to adults and children.

## COUNT ONE

## (HEALTH CARE FRAUD)

14.   From on or about October 20, 1999, and continuing until on or about August 30, 2002, within the District of Columbia and elsewhere, Defendant RICARDO HENRY willfully and knowingly devised, and intended to devise, a scheme and artifice to defraud Medicaid of money.

## Purpose of the Scheme and Artifice

15.   It was a purpose of the scheme and artifice that Defendant RICARDO HENRY would obtain money fraudulently from Medicaid which he would use for his own benefit.

## The Scheme

16. It was a part of the scheme and artifice that Defendant RICARDO HENRY would represent himself to have received a Ph.D. degree even though he had not yet received a Ph.D. degree.

17.   It was a part of the scheme and artifice that Defendant RICARDO HENRY would inform the therapists that they should visit patients one time every two weeks but cause false claims to be submitted to Medicaid seeking reimbursement for services claimed to have been provided to those patients more than twice per month.

18.   It was a part of the scheme and artifice that, in addition to obtaining the Medicaid

4

identification numbers for patients referred to Insight who were eligible for Medicaid, Defendant RICARDO HENRY also would obtain Medicaid identification numbers for family members of the patients who were not themselves patients, and then cause false claims to be submitted to Medicaid seeking reimbursement for services claimed to have been provided to the family members.

19. It was a part of the scheme and artifice that Defendant RICARDO HENRY would establish office procedures at Insight so that patient files and progress notes were kept away from the billing clerk so that the billing clerk had no ability to compare the bills she submitted to Medicaid with the patient files and progress notes.

20.  It was a part of the scheme and artifice that Defendant RICARDO HENRY would direct the activity of the billing clerk regarding claims sent to Medicaid.

21. It was a part of the scheme and artifice that Defendant RICARDO HENRY would cause false and fraudulent claims to be sent to Medicaid for patients whose relationship with Insight had been terminated and to whom the claimed services had not been provided.  Such patients include, for example and among others: JM-083, CC-037, and LR-333.

22. It was a part of the scheme and artifice that Defendant RICARDO HENRY would cause false and fraudulent claims to be sent to Medicaid in the name of a patient's family member even though only the patient, and not the family member, had been provided service by Insight.  Such family members include, for example and among others: JM-016, CM-021, YM-598, MM-068, DM-388, QS-915, CS-251, JS-481, RB-441, AW-284, IW-049, AW-311, BR-469, SR-000, and AC-798.

23. It was a part of the scheme and artifice that Defendant RICARDO HENRY would

cause false and fraudulent claims to be sent to Medicaid for dates on which service for a patient had been cancelled. Such patients include, for example and among others: MW-723, PW-743, JM-083, and BW-693.

24. It was a part of the scheme and artifice that Defendant RICARDO HENRY would cause false and fraudulent claims to be sent to Medicaid for dates on which no service had been provided to a patient. Such patients include, for example and among others: SB-948, JM-083, MW–723, and JS-500.

25.    It was part of the scheme and artifice that Defendant RICARDO HENRY would cause false and fraudulent claims to be sent to Medicaid requesting payment for services purportedly rendered to various patients more often than twice per month, even though he instructed the therapists to visit those patients one time every two weeks. Such patients include, for example and among others: SB-948, CW-243, BW-693, PW-743, MW-723, and CC-037.

26. It was part of the scheme and artifice that Defendant RICARDO HENRY would cause claims to be sent to Medicaid using the "Group Therapy" code even though that code should not have been used, thereby inflating the amount Medicaid paid to Insight. Such patients include, for example and among others: JM–083, JM-016, MM-068, CM-021, YM-598, DM-388, SB-948, JS-500, JS-481, CS-251, QS-915, PW-743, MW-723, IW-049, AW-284, AW-311, AC-798, CC-037, SR-000, BR-469.

27.  From on or about April 1, 2001, and continuing until on or about August 30, 2002, in the District of Columbia, and elsewhere, Defendant RICARDO HENRY knowingly and willfully did execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program, namely, Medicaid, and to obtain, by means of false and fraudulent pretenses,

representations, and promises, namely, Medicaid reimbursement claims, money owned by and under the custody and control of a healthcare benefit program, namely, Medicaid, in connection with the delivery of, and payment for, health care benefits, items and services.

**(Health Care Fraud, and Causing an Act to be Done,
in violation of Title 18, United States Code, Sections 1347 and 2.)**

## <u>COUNTS TWO THROUGH SIXTY-TWO</u>

**(FALSE STATEMENTS REGARDING HEALTH CARE MATTERS)**

28.  Paragraphs 1 through 26 are realleged and incorporated as though fully set forth herein.

29. As examples of false claims submitted in the scheme alleged, on or about the dates and for the persons enumerated below, within the District of Columbia, in a matter relating to a health care benefit program, that is Medicaid, the Defendant RICARDO HENRY, did knowingly and willfully make, and cause to be made, materially false, fictitious and fraudulent statements and representations, that is, Medicaid reimbursement claims, when, as Defendant RICARDO HENRY well knew, such claims were false, fictitious and fraudulent, in that the claimed services had, in fact, not been performed as alleged for each count below:

**FALSE CLAIMS SUBMITTED AFTER TERMINATING PATIENTS (PARAGRAPH 21)**

| COUNT | DATE | PATIENT |
|---|---|---|
| TWO | 4/5/2001 | JM-083 |
| THREE | 4/26/2001 | JM-083 |
| FOUR | 4/10/2001 | LR-333 |
| FIVE | 4/17/2001 | LR-333 |
| SIX | 4/6/2001 | CC-037 |
| SEVEN | 11/2/2001 | CC-037 |

**FALSE CLAIMS FOR FAMILY MEMBERS NOT TREATED (PARAGRAPH 22)**

| COUNTS | DATE | PATIENT |
|---|---|---|
| EIGHT | 4/3/2001 | JS-481 |
| NINE | 11/5/2001 | JS-481 |
| TEN | 4/3/2001 | CS-251 |
| ELEVEN | 11/5/2001 | CS-251 |
| TWELVE | 4/3/2001 | QS-915 |
| THIRTEEN | 11/5/200 | QS-915 |
| FOURTEEN | 4/3/2001 | AW-284 |
| FIFTEEN | 8/30/2002 | AW-284 |
| SIXTEEN | 4/3/2001 | IW-049 |
| SEVENTEEN | 8/30/02 | IW-049 |
| EIGHTEEN | 4/3/2001 | AW-311 |
| NINETEEN | 7/5/2002 | AW-311 |
| TWENTY | 4/3/2001 | BR-469 |
| TWENTY-ONE | 11/5/2001 | BR-469 |
| TWENTY-TWO | 4/3/2001 | SR-000 |

| TWENTY-THREE | 11/5/2001 | SR-000 |
| TWENTY-FOUR | 4/6/2001 | AC-798 |
| TWENTY-FIVE | 11/2/2001 | AC-798 |

### FALSE CLAIMS FOR CANCELLED SESSIONS (PARAGRAPH 23)

| COUNT | DATE | PATIENT |
|---|---|---|
| TWENTY-SIX | 4/6/2001 | BW-693 |
| TWENTY-SEVEN | 4/20/2001 | BW-693 |
| TWENTY-EIGHT | 8/27/2001 | CW-243 |
| TWENTY-NINE | 7/9/2001 | MW-723 |
| THIRTY | 7/9/01 | PW-743 |

### FALSE CLAIMS WHEN NO SERVICES RENDERED (PARAGRAPH 24)

| COUNT | DATE | PATIENT |
|---|---|---|
| THIRTY-ONE | 7/23/2001 | IW-049 |
| THIRTY-TWO | 7/23/2001 | MW-723 |
| THIRTY-THREE | 8/13/2001 | IW-049 |
| THIRTY-FOUR | 8/13/2001 | MW-723 |

**FALSE CLAIMS SUBMITTED MORE THAN TWICE PER MONTH (PARAGRAPH 25)**

| COUNT | DATE | PATIENT |
|---|---|---|
| THIRTY-FIVE | 2/19/2002 | BW-693 |
| THIRTY-SIX | 5/9/2002 | BW-693 |
| THIRTY-SEVEN | 6/15/2001 | CW-243 |
| THIRTY-EIGHT | 10/8/2001 | CW-243 |
| THIRTY-NINE | 4/3/2001 | MW-723 |
| FORTY | 5/24/2002 | MW-723 |
| FORTY-ONE | 4/3/2001 | PW-743 |
| FORTY-TWO | 6/21/2002 | PW-743 |
| FORTY-THREE | 4/6/2001 | CC-037 |
| FORTY-FOUR | 10/26/2001 | CC-037 |

**FALSE CLAIMS FOR "GROUP THERAPY" (PARAGRAPH 26)**

| COUNT | DATE | PATIENT |
|---|---|---|
| FORTY-FIVE | 4/24/2001 | PW-743 |
| FORTY-SIX | 4/24/2001 | MW-723 |
| FORTY-SEVEN | 4/24/2001 | IW-049 |
| FORTY-EIGHT | 4/24/2001 | AW-284 |
| FORTY-NINE | 4/24/2001 | AW-311 |
| FIFTY | 9/7/2001 | AC-798 |
| FIFTY-ONE | 9/7/2001 | CC-037 |
| FIFTY-TWO | 5/1/2001 | CS-251 |
| FIFTY-THREE | 5/1/2001 | JS-500 |
| FIFTY-FOUR | 5/1/2001 | JS-481 |
| FIFTY-FIVE | 5/1/2001 | QS-915 |

| FIFTY-SIX | 5/15/2001 | SR-000 |
|-----------|-----------|--------|
| FIFTY-SEVEN | 5/15/2001 | BR-469 |
| FIFTY-EIGHT | 8/23/2001 | JM-016 |
| FIFTY-NINE | 8/23/2001 | MM-068 |
| SIXTY | 8/23/2001 | CM-021 |
| SIXTY-ONE | 8/23/2001 | YM-598 |
| SIXTY-TWO | 8/23/2001 | DM-388 |

**(False Statements Relating to Health Care Matters, in
Violation of Title 18, United States Code, Sections 1035 and 2)**

**COUNT SIXTY-THREE**

**(Bankruptcy Fraud)**

**<u>Background</u>**

30. Paragraphs 1 through 26 and 29 are realleged and incorporated as though fully set forth herein.

31. Defendant RICARDO HENRY used ill-gotten funds obtained from the health care fraud scheme to purchase assets, including a 2001 Lapis Blue Porsche 911 Carrera Cabriolet with a Vehicle Identification Number ("VIN") of WPOCA299X1S650435 (hereinafter referred to as "Porsche VIN-435"). The total amount of money paid by Defendant RICARDO HENRY to purchase the Porsche VIN-435, including finance costs, was approximately $113,000. A substantial portion of that money was obtained fraudulently from Medicaid.

32. As of August 2005, Defendant RICARDO HENRY owed various credit card companies over $130,000. He also owed the Internal Revenue Service approximately $20,000.

33.     As of August 2005, Defendant RICARDO HENRY continued to maintain

11

possession of the Porsche VIN-435, which had been driven approximately 7,000 miles in its lifetime, and which was valuable.

**Purpose of the Scheme and Artifice**

34. It was a purpose of the scheme and artifice that Defendant RICARDO HENRY would use the bankruptcy laws, and specifically would file a petition under Title 11 of the United States Code, to retain ill-gotten assets that he acquired as a result of the health care fraud he committed as set forth in paragraphs 14 through 26 above.

**The Scheme**

35. It was part of the scheme and artifice that on or about August 18, 2005, Defendant RICARDO HENRY signed a Voluntary Petition for Bankruptcy under Chapter 7 of Title 11 of the United States Code.

36. It was part of the scheme and artifice that Defendant RICARDO HENRY filed the Voluntary Petition for Bankruptcy with the United States Bankruptcy Court for the District of Columbia ("Bankruptcy Court") on August 25, 2005, in Bankruptcy Case Number 05-BK-01259.          It was part of the scheme and artifice that in his Voluntary Petition for Bankruptcy, Defendant RICARDO HENRY listed debts of over $150,000 that he sought to discharge.

37. It was part of the scheme and artifice that, when he was required to list all vehicles that he owned in response to Question 23 of Schedule B of the Voluntary Petition, Defendant RICARDO HENRY stated that he owned only a 1999 Chevrolet Tracker worth $5,000.

38. It was part of the scheme and artifice that Defendant RICARDO HENRY failed to list the Porsche VIN-435 in his entire Voluntary Petition for Bankruptcy.

12

39. It was part of the scheme and artifice that Defendant RICARDO HENRY paid Lewin S. Henry to register the Porsche VIN-435 in New York in or around September 2005 under the name of Lewin S. Henry.

40. It was part of the scheme and artifice that Defendant RICARDO HENRY caused car insurance in the name of Lewin S. Henry to be purchased from Liberty Mutual for the Porsche VIN-435.

41. It was part of the scheme and artifice that Defendant RICARDO HENRY maintained ownership of the Porsche VIN-435 after August 2005, and registered the vehicle in the District of Columbia in his own name on or about November 25, 2005.

42. It was part of the scheme and artifice that on or about October 6, 2005, Defendant RICARDO HENRY answered interrogatories from the Bankruptcy Trustee in which he affirmed, under the penalty of perjury, that he had listed all of his assets in his Voluntary Petition for Bankruptcy.

43. From on or about August 18, 2005 through on or about March 10, 2006, within the District of Columbia, Defendant RICARDO HENRY, having devised or intended to devise a scheme or artifice to defraud, filed a petition for bankruptcy under Title 11 of the United States Code in part for the purpose of concealing the health care fraud scheme and its assets,  and made a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under Title 11 for the purpose of concealing the health care fraud scheme and its assets.

**(Bankruptcy Fraud, in Violation of Title 18, United States Code, Section 157)**

**COUNT SIXTY-FOUR**

**(Concealment of assets; false oaths and claims)**

44. Paragraphs 1 through 26, 29, and 31 through 42 are realleged and incorporated as though set forth fully herein.

45. In his Voluntary Petition for Bankruptcy, filed with the Bankruptcy Court on August 25, 2005, Defendant RICARDO HENRY, in response to Question 23 of Schedule B, which required him to list all vehicles he owned, stated that he owned only a 1999 Chevrolet Tracker.

46. Defendant RICARDO HENRY signed his Voluntary Petition for Bankruptcy under the penalty of perjury declaring that his answers therein were true and correct.

47. Defendant RICARDO HENRY in fact owned a valuable Porsche VIN-435. Defendant's RICARDO HENRY's Separation and Property Settlement Agreement with his former wife, executed on March 19, 2005, gave Defendant RICARDO HENRY full ownership of the Porsche VIN-435.  Although he was legally required to list the vehicle in his Voluntary Petition for Bankruptcy, Defendant RICARDO HENRY failed to do so.

48. From on or about August 18, 2005 through on or about March 10, 2006, in the District of Columbia and elsewhere, Defendant RICARDO HENRY did knowingly and fraudulently conceal property belonging to his estate, namely, the Porsche VIN-435, from the trustee charged with the control of Defendant RICARDO HENRY's property and from the creditors and the United States Trustee, and did knowingly and fraudulently make a false declaration or statement under penalty of perjury in relation to a case under Title 11.

**(Concealment of Assets; False Oaths and Claims, in Violation of Title 18, United States Code, Section 152(1) and (3))**

14

## COUNT SIXTY-FIVE

### (Concealment of assets; false oaths and claims)

49. Paragraphs 1 through 26, 29, 31 through 42, and 45 through 47 are realleged and incorporated as though set forth fully herein.

50. On or about April 8, 2005, Defendant RICARDO HENRY sold real estate, specifically a house located at 17 Bonifant Road, Silver Spring, Maryland.  Defendant RICARDO HENRY's Separation and Property Settlement Agreement with his former wife, executed on March 19, 2005, gave Defendant RICARDO HENRY full ownership of the house.

51. As a result of the sale of the house, Defendant RICARDO HENRY received approximately $121,949.85 in cash.

52. In his Voluntary Petition for Bankruptcy, filed with the Bankruptcy Court on August 25, 2005, Defendant RICARDO HENRY was required to prepare a Statement of Financial Affairs.  Paragraph 10 of the Statement of Financial Affairs required Defendant RICARDO HENRY to list all property, other than property transferred in the ordinary course of business or financial affairs, that was transferred or sold within one year.  Defendant RICARDO HENRY was required to list the sale of his house and his resulting gain of $121,949.85 on April 8, 2005, in response to Paragraph 10 of the Statement of Financial Affairs.

53. Defendant RICARDO HENRY signed his Voluntary Petition for Bankruptcy, including his Statement of Financial Affairs, under the penalty of perjury declaring that his answers therein were true and correct.

54. Defendant RICARDO HENRY failed to list the sale of his house and his gain of $121,949.85, and instead stated that he had not transferred any property since August 25, 2004.

55. From on or about August 18, 2005 through on or about March 10, 2006, in the District of Columbia and elsewhere, Defendant RICARDO HENRY did knowingly and fraudulently make a false oath or account in relation to a case under Title 11 and knowingly and fraudulent made a false declaration or statement under penalty of perjury in relation to a case under Title 11.

**(Concealment of Assets; False Oaths and Claims, in Violation of Title 18, United States Code, Section 152(2) and (3))**

**COUNT SIXTY-SIX**

**(Concealment of assets; false oaths and claims)**

56. Paragraphs 1 through 26, 29, 31 through 42, 45 through 47, and 50 through 54 are realleged and incorporated as though set forth fully herein.

57. In his Voluntary Petition for Bankruptcy, filed with the Bankruptcy Court on August 25, 2005, in response to Question 8 of Schedule B, which directed him to list all firearms that he owned, Defendant RICARDO HENRY stated that he owned no firearms.

58. Defendant RICARDO HENRY signed his Voluntary Petition for Bankruptcy under the penalty of perjury declaring that his answers therein were true and correct.

59. In fact, Defendant RICARDO HENRY owned at least six firearms at the time he filed his Voluntary Petition for Bankruptcy, including a valuable Winchester rifle and carbine set.

60. From on or about August 18, 2005 through on or about March 10, 2006, in the District of Columbia and elsewhere, Defendant RICARDO HENRY did knowingly and fraudulently conceal property belonging to his estate, namely, firearms, from the trustee charged with the control of Defendant RICARDO HENRY's property and from the creditors and the

United States Trustee, and knowingly and fraudulently made a false declaration or statement

under penalty of perjury in relation to a case under Title 11.

**(Concealment of Assets; False Oaths and Claims, in Violation of Title 18,
United States Code, Section 152(1) and (3))**

**COUNT SIXTY-SEVEN**

**(Concealment of assets; false oaths and claims)**

61. Paragraphs 1 through 26, 29, 31 through 42, 45 through 47, 50 through 54, and 57

through 59 are realleged and incorporated as though set forth fully herein.

62. In his Voluntary Petition for Bankruptcy, filed with the Bankruptcy Court on August

25, 2005, in response to Question 1 on Schedule B, which directed him to list cash on hand,

Defendant RICARDO HENRY stated that he had $20 in cash in his possession.

63. In response to Question 2 on Schedule B, which directed Defendant RICARDO

HENRY to list all bank accounts in his name as well as their current market value, Defendant

RICARDO HENRY stated that he owned a Suntrust checking account with a $900 balance.

64. Defendant RICARDO HENRY signed his Voluntary Petition for Bankruptcy under

the penalty of perjury declaring that his answers therein were true and correct.

65. In fact, on August 18, 2005, the date on which Defendant RICARDO HENRY signed

the Voluntary Petition for Bankruptcy, he withdrew $6,000 in cash from his Suntrust checking

account.  On August 25, 2005, the date on which Defendant RICARDO Henry filed his

Voluntary Petition for Bankruptcy with the Bankruptcy Court, he withdrew another $4,000 in

cash from his Suntrust Checking Account.

66. From on or about August 18, 2005, through on or about March 10, 2006, in the

District of Columbia and elsewhere, Defendant RICARDO HENRY did knowingly and

fraudulently conceal property belonging to his estate, namely, cash, from the trustee charged

with the control of Defendant RICARDO HENRY's property and from the creditors and the

United States Trustee, and knowingly and fraudulently made a false declaration or statement

under penalty of perjury in relation to a case under Title 11.

**(Concealment of Assets; False Oaths and Claims, in Violation of Title 18,
United States Code, Section 152(1) and (3))**

**COUNT SIXTY-EIGHT**

**(Concealment of assets; false oaths and claims)**

67. Paragraphs 1 through 26, 29, 31 through 42, 45 through 47, 50 through 54, 57

through 59, and 62 through 65 are realleged and incorporated as though set forth fully herein.

68. In his Voluntary Petition for Bankruptcy, filed with the Bankruptcy Court on August

25, 2005, in response to Question 2 on Schedule B, which directed him to list all bank accounts

in his name, Defendant RICARDO HENRY listed only his Bank of America checking account,

with a balance of $2,532, and his Suntrust checking account, with a balance of $900.

69. Defendant RICARDO HENRY signed his Voluntary Petition for Bankruptcy under

the penalty of perjury declaring that his answers therein were true and correct.

70. In fact, Defendant RICARDO HENRY also maintained an account at National

Commercial Bank in Jamaica.  As of August 25, 2005, that account contained at least $1,000

which Defendant RICARDO HENRY had deposited into that account on April 29, 2005.

71. Defendant RICARDO HENRY failed to list the bank account at National

Commercial Bank in Jamaica in his Voluntary Petition for Bankruptcy as required.

72. From on or about August 18, 2005, through on or about March 10, 2006, in the

District of Columbia and elsewhere, Defendant RICARDO HENRY did knowingly and

fraudulently conceal property belonging to his estate, namely, his bank account at the National

Commercial Bank in Jamaica, from the trustee charged with the control of Defendant RICARDO

HENRY's property and from the creditors and the United States Trustee, and knowingly and

fraudulently made a false oath and account in a case under Title 11 and a false declaration or

statement under penalty of perjury in relation to a case under Title 11.

**(Concealment of Assets; False Oaths and Claims, in Violation of Title 18,
United States Code, Section 152(1), (2) and (3))**

**COUNT SIXTY-NINE**

**(Money Laundering)**

73. Paragraphs 1 through 26, 29, 31 through 42, 45 through 47, 50 through 54, 57

through 59, 62 through 65, and 68 through 71 are realleged and incorporated as though set forth

fully herein.

74. On or about November 25, 2005, in the District of Columbia and elsewhere,

Defendant RICARDO F. HENRY, having caused the Porsche VIN-435 to be registered in New

York in the name of Lewin S. Henry in September 2005, did knowingly and willfully conduct

and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit,

causing the Porsche VIN-435 to be registered in the District of Columbia in his own name,

which involved the proceeds of a specified unlawful activity, that is, health care fraud, knowing

that the transaction was designed in whole or in part to conceal and disguise the location,

ownership, and control of the Porsche VIN-435, and that while conducting and attempting to

conduct such financial transaction knew that the property involved in the financial transaction,

that is, the Porsche VIN-435, represented the proceeds of some form of unlawful activity.

**(Money Laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i))**

## COUNT SEVENTY

### (Money Laundering)

75.  Paragraphs 1 through 26, 29, 31 through 42, 45 through 47, 50 through 54, 57 through 59, 62 through 65, and 68 through 71 are realleged and incorporated as though set forth fully herein.

76.  On or about November 25, 2005, in the District of Columbia and elsewhere, Defendant RICARDO F. HENRY, having caused the Porsche VIN-435 to be registered in New York in the name of Lewin S. Henry in September 2005, did knowingly and willfully conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, causing the Porsche VIN-435 to be registered in the District of Columbia in his own name in November 2005, which involved the proceeds of a specified unlawful activity, that is, bankruptcy concealment, knowing that the transaction was designed in whole or in part to conceal and disguise the location, ownership, and control of the Porsche VIN-435, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction, that is, the Porsche VIN-435, represented the proceeds of some form of unlawful activity.

**(Money Laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i))**

### COUNT SEVENTY-ONE

### (Money Laundering)

77. Paragraphs 1 through 26, 29, 31 through 42, 45 through 47, 50 through 54, 57 through 59, 62 through 65, and 68 through 71 are realleged and incorporated as though set forth fully herein.

78. On or about August 18, 2005, in the District of Columbia and elsewhere, Defendant RICARDO F. HENRY did knowingly and willfully conduct and attempt to conduct a financial

transaction affecting interstate and foreign commerce, to wit, the withdrawal of $6,000 in cash from a Suntrust Checking Account, which involved the proceeds of a specified unlawful activity, that is, bankruptcy concealment, knowing that the transaction was designed in whole or in part to conceal and disguise the location, ownership, and control of the $6,000 in cash, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction, that is, the $6,000 in cash, represented the proceeds of some form of unlawful activity.

**(Money Laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i))**

## COUNT SEVENTY-TWO

### (Money Laundering)

79. Paragraphs 1 through 26, 29, 31 through 42, 45 through 47, 50 through 54, 57 through 59, 62 through 65, and 68 through 71 are realleged and incorporated as though set forth fully herein.

80. On or about August 25, 2005, in the District of Columbia and elsewhere, Defendant RICARDO F. HENRY did knowingly and willfully conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the withdrawal of $4,000 in cash from a Suntrust Checking Account, which involved the proceeds of a specified unlawful activity, that is, bankruptcy concealment, knowing that the transaction was designed in whole or in part to conceal and disguise the location, ownership, and control of the $4,000 in cash, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction, that is, the $4,000 in cash, represented the proceeds of some form of unlawful activity.

**(Money Laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i))**

**FORFEITURE ALLEGATION UNDER 18 U.S.C. § 982(a)(7)**

81.  The violations alleged in Counts One through Seventy-Two of this Indictment are realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982(a)(7).

82. As a result of the offenses alleged in Counts One through Sixty-Two of this Indictment, the defendant, RICARDO HENRY, shall forfeit to the United States property constituting or derived, directly or indirectly, from gross proceeds traceable to the commission of health care fraud, in violation of Title 18, United States Code, Section 1347; and false statements regarding health care matters, in violation of Title 18, United States Code, Section 1035(a)(2), including, but not limited to:

     (a)    One $1,000 United States Savings Bond bearing serial number 0003741367, payable to Ricardo Henry;

     (b)    One $1,000 United States Savings Bond bearing serial number 0003741368, payable to Ricardo Henry;

     (c)    One $1,000 United States Savings Bond bearing serial number 0003741369, payable to Ricardo Henry;

     (d)    One $1,000 United States Savings Bond bearing serial number 0003741370, payable to Ricardo Henry;

     (e)    One $1,000 United States Savings Bond bearing serial number 0003741371, payable to Ricardo Henry;

     (f)    One $1,000 United States Savings Bond bearing serial number 0003741372, payable to Ricardo Henry;

     (g)    One $1,000 United States Savings Bond bearing serial number 0003741373, payable to Ricardo Henry;

     (h)    One $1,000 United States Savings Bond bearing serial number 0003741374, payable to Ricardo Henry;

     (I)    One $1,000 United States Savings Bond bearing serial number 0003741375, payable to Ricardo Henry;

     (j)    One $1,000 United States Savings Bond bearing serial number 0003741376, payable to Ricardo Henry.

     (k)    One 2001 Lapis Blue Porsche 911 Carrera Cabriolet with VIN Number WPOCA299X1S650435.

Money Judgment:

(l)     A sum of money equal to the total amount of property constituting or derived, directly or indirectly, from gross proceeds traceable to the commission of health care fraud, in violation of 18 U.S.C. § 1347; and false statements regarding health care matters, in violation of 18 U.S.C. § 1035(a)(2), Fed. R. Crim. P. 32.2(b)(1).

By virtue of the commission of felony offenses charged in Counts One through Sixty-Two of this Indictment, any and all interest that the defendant has in property constituting or derived, directly or indirectly, from gross proceeds traceable to the commission of health care fraud, in violation of Title 18, United States Code, Section 1347; and false statements regarding health care matters, in violation of Title 18, United States Code, Section 1035(a)(2); is vested in the United States and hereby forfeited to the United States, pursuant to Title 18, United States Code, Section 982(a)(7).

83.  If any of the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(7), as a result of any act or omission of the defendant:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third person;

(c)    has been placed beyond the jurisdiction of the Court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property that cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of other property of said defendant up to the value of said property listed above as being subject to forfeiture.

**(Criminal Forfeiture, in violation of Title 18, United States Code, Section 982(a)(7); Title 18, United States Code, Section 982(b)(1))**

A TRUE BILL:


FOREPERSON



ATTORNEY OF THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA