UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - -X

**UNITED STATES OF AMERICA**     :

       **v.**     :     **1:06cr00079**
                                  **(CKK)**

**RICARDO HENRY,**     :

      **Defendant.**     :
- - - - - - - - - - - - - - -X

**MOTION TO SEVER COUNTS BASED ON IMPROPER JOINDER UNDER
RULE 8(a) AND PREJUDICIAL JOINDER UNDER RULE 14**

**COMES NOW DEFENDANT**, through undersigned counsel, and herein moves to sever based on improper and prejudicial joinder under Rules 8(a) and 14, respectively. In support of this motion, defendant respectfully states as follows:

**PROCEDURAL POSTURE**

The original 62-count indictment (hereinafter "the Indictment") in this matter was issued on March 28, 2006 and alleges various numbers of violations[1] of §1347, 18 U.S.C. §1035 and 18 U.S.C. §2 surrounding 23 of Mr. Henry's patients. The United States believes it can prove that defendant, in his capacity as President and CEO of Insight Therapeutic Services, Mr. Henry used each patient -- identified solely by letters and numbers within the indictment -- to fraudulently recoup monies from Medicaid.

Count 1 alleges a violation 18 U.S.C. -- a blanket charge of Health Care Fraud -- which carries up to 10 years in jail, by

---

[1]There are some patients for which Mr. Henry allegedly violated the statutes upwards of 5 times (CC-037) and others, only once in 2002 (MW-633). Compilations of the various violations against the 22 patients makes up Counts 2 through 62 of the Indictment.

itself and is used as a backdrop for the "scheme" (counts 2 through 62).  Each subsequent count specifies how Mr. Henry allegedly procured the money fraudulently.

This indictment includes acts from April of 2001 through November of 2002, though there is notably a large gap between August of 2001 and February of 2002 where there is no charged conduct -- see Counts 9 and 35.)  For the Court's convenience, Counts 2 through 64 are laid out in the following chart, with the 2002 counts repeated in chronology:

<u>2001</u>
```
JM-083          Count 2          4/5/2001
                Count 3          4/26/2001
JM-016          Count 58         8/23/2001
LR-333          Count 4          4/10/2001
                Count 5          4/17/2001
CC-037          Count 6          4/6/2001
                Count 7          11/2/2001
                Count 43         4/6/2001
                Count 44         10/26/2001
                Count 51         9/7/2001
JS-481          Count 8          4/3/2001
                Count 9          11/5/2001
                Count 54         5/1/2001
JS-500          Count 53         5/1/2001
CS-251          Count 10         4/3/2001
                Count 11         11/5/2001
                Count 52         5/1/2001
QS-915          Count 12         4/3/2001
                Count 13         11/5/200²
                Count 55         5/1/2001
AW-284          Count 14         4/3/2001
                Count 15         8/30/2002
                Count 48         4/24/2001
AW-311          Count 18         4/3/2001
                Count 49         4/24/2001
                Count 19         7/5/2002
IW-049          Count 16         4/3/2001
                Count 31         7/23/2001
                Count 33         8/13/2001
```

---

²It is assumed that this is a 2001 count -- though the Second Superseding Indictment leaves off whether it was 2001 or 2002.

```
                    Count 47          4/24/2001
                    Count 17          8/30/2002
BR-469              Count 20          4/3/2001
                    Count 21          11/5/2001
                    Count 57          5/15/2001
SR-000              Count 22          4/3/2001
                    Count 23          11/5/2001
                    Count 56          5/15/2001
AC-798              Count 24          4/6/2001
                    Count 25          11/2/2001
                    Count 50          9/7/2001
BW-693              Count 26          4/6/2001
                    Count 27          4/20/2001
                    Count 35          2/19/2002
                    Count 36          5/9/2002
CW-243              Count 28          8/27/2001
                    Count 37          6/15/2001
                    Count 38          10/8/2001
MW-723              Count 29          7/9/2001
                    Count 32          7/23/2001
                    Count 34          8/13/2001
                    Count 39          4/3/2001
                    Count 46          4/24/2001
PW-743              Count 30          7/9/2001
                    Count 41          4/3/2001
                    Count 45          4/24/2001
                    Count 42          6/21/2002
MM-068              Count 59          8/2/2001
CM-021              Count 60          8/23/2001
YM-598              Count 61          8/23/2001
DM-388              Count 62          8/23/2001
```

**2002**
```
BW-693              Count 35          2/19/2002
                    Count 36          5/9/2002
MW-633              Count 40          5/24/2002 (sole count of this pt)
PW-743              Count 42          6/21/2002
AW-311              Count 19          7/5/2002
AW-284              Count 15          8/30/2002
IW-049              Count 17          8/30/2002
```

The superseding indictment (hereinafter "SI") filed May 30, 2006 -- 2 days after the original indictment -- adds Counts 63, 64, 65, and 66 alleging violations of the bankruptcy code in conjunction with the filing of a personal bankruptcy petition on August 25, 2005 by Mr. Henry, well over 4 years after most of the charged conduct in the Indictment (see inter alia, counts 2, 6, 8,

3

10 and 43) and 3 years after the most recent charged conduct (See Counts 15 and 17).

The United States has improperly joined the counts arising out of the August 25, 2005 bankruptcy petition -- Counts 63 through 67 -- with the original Indictment and they must be severed by this Court.[3]  It is conceded that Counts 68 through 72 should be tried in the bankruptcy case as those counts go specifically to assets which were not listed on a bankruptcy petition.  It is the addition of these 5 additional counts, however, to the bankruptcy counts in the indictment which further support defendant's argument of the cumulative prejudicial effect should all of these counts be left for one very long, very complicated, and very confusing trial.

1. **Joinder of Counts 65 through 72 is improper under FRCP 8(a) and should be severed**.

If there ever were a case in which the Court should sever counts for trial of a single defendant, this is the case.

As indicated, Mr. Henry is charged in 3 waves: initially, with 64 Counts of Health Care Fraud relating to activities occurring in 2001 and 2002; secondly with 4 Counts of Bankruptcy Fraud relating to a 2005 Personal Bankruptcy Petition; and finally, by adding an additional group of counts -- including

---

[3]This motion is seeking to sever out the original, 62-count medicaid fraud case from the subsequent counts, 63 on.  It is the defendant's position that the Government's 11th hour of gilding of the lily, by adding counts 68 through 72 in an indictment returned only after the originally-scheduled status hearing at which motions were to be discussed, completely supports defendant's position that the mish-mash of anything possible that even remotely sounds fraudulent will help them prove their medicaid fraud case.  This "everything but the kitchen sink" second super-ceding indictment is entirely prejudicial and should be severed.

money laundering -- relating to the personal bankruptcy petition.

First, despite a nationwide search in all courts, undersigned counsel has been unable to locate a reported case wherein one, lone, defendant -- not a cartel of drug dealers, or a group of gang members, or even CEOs of a large company -- but one, single, defendant -- was charged with anywhere near 72 Counts -- even anecdotally.  Moreover, review of all databases in Westlaw[4] reveals that the only case indicted with close to the amount of charges against 1, single defendant -- as in this case -- was, curiously, not a reported case -- <u>U.S. v. Triumph</u>, (E.D. Conn.) 2000 WL[5], decided 8/24/2004 in which one defendant was charged in a 40 Count superseding indictment until the Court granted its Motion to Sever Count 40 -- Failure to Appear -- indicating that it would be too prejudicial to have this "flight" count among the other 39 Counts.

What makes Mr. Henry's case even more difficult from the defense standpoint, is that the lead count in the indictment, §1347, 18 U.S.C. -- the gist of the Government's case against Mr. Henry -- by itself carries with it a penalty of 10 years.  Nevertheless, instead of charging forth with, perhaps, 1 patient for whom it is alleged Mr. Henry committed 5 separate counts of fraud, the Government has indicted acts using 23 patients over a 16-month period in 2001-2002.

---

[4] The search was for "multicount indictment" /p sever and if more than one defendant was listed, the next case was read.

[5] The cite indicates that "This case is not reported in F.2d."

The United State's choice to charge Mr. Henry with 72 Counts in the same indictment is, itself, prejudicial. Arguably, in an unveiled attempt to secure a guilty plea from Mr. Henry, the United States has set him up to completely fail at defending himself under the obvious theory of "where there is smoke there is fire." The mere fact that Mr. Henry is facing 72 Counts in 1 indictment is irrebuttably prejudicial and will be specifically addressed below.

Rule 8(a) states in relevant part:

> The indictment. . .may charge a defendant in separate counts with 2 or more offenses if the offenses charged. . .are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

The original indictment in this matter was issued on March 28, 2006 (and clearly based on the dates used therein was racing the 5-year statute of limitations.) (See, inter alia, Counts 2, 8, 10, 12, 16 and §3282.) These original 64 Counts all surround activities allegedly undertaken by Mr. Henry in his position as CEO and psychologist at Insight Therapeutic Services and submitting allegedly false claims for Medicaid Reimbursement. The time-frame is specifically 16 months between April 3, 2001[6] and August 30, 2002.

The United States then chose not to indict the case for almost 5 years. During this time period, there is no allegation that Mr. Henry was doing anything in his capacity as CEO for

---

[6] 6 days before the statute of limitations would have run on the oldest count. (See Counts 8, 10, 12, 14, 16, 18, 20, 22, 39 and 41, Exhibit 1 attached hereto.)

Insight Therapeutics or anything regarding health care fraud; there is no evidence that he was conspiring with anyone else to commit such a fraud; there is no evidence that he was planning for his bankruptcy; and there was clearly over 4 years where absolutely nothing is going on which would justify any sort of joinder of subsequent counts occurring in a years-later, separate timeframe.

Nevertheless, based on a personal bankruptcy[7] petition that Mr. Henry filed in August of 2005 -- over 3 years after the last act alleged in the original indictment, the United States seeks to, frankly, throw the book at Mr. Henry by adding 4 more counts to an already overdone indictment. Counts 65 through 68 are entirely improperly joined with the original 64 and must be severed.[8]

The touchstone as to whether or not the offenses[9] are properly joined is whether the existence of the "other crimes" would be admissible in separate trials. . ." Drew v. United States, 331 F.2d 85, 90 n.12 (1964 citing cases). In a very terse and clearly "no nonsense" opinion, the Court reversed a defendants' convictions on facts strikingly similar to those in the instant

---

[7] The Court will note that it is Mr. Henry's failure to list a gun and the transference of a marital property to his wife after a divorce that makes up 2 of the Counts. There is absolutely no way these personal counts are properly joined with the earlier Medicaid Fraud counts.

[8] The sequitur to this argument is that the second superseding indictment -- Counts 69 through 72 -- which allege, inter alia, money laundering, should be tried in the separate trial with the bankruptcy counts.

[9] For purposes of this argument, defendant is seeking sever counts 1 through 64 from the rest of the counts.

matter.  "In short, the government's justification for joinder of the conspiracies was "expounded in thoroughly conclusory terms," citing United States v. Jackson, 562 F.2d 789, 795 (D.C.Cir.1977).

While it will be the Government's requirement in its opposition to the instant motion to justify its joinder in this matter, it can be expected that the language it uses in the indictment indicates that in this matter, too, it "expound[s] in thoroughly conclusory terms."  On page 12 of the second superseding indictment the Government avers that "it was part of the scheme and artifice that on or about August 18, 2005, Defendant . . .signed a Voluntary Petition for Bankruptcy."  Nowhere in this document does the government specify how it justifies tying the two, separate, unrelated acts to each other.

Under Rule 403 and 404(b)[10] of the Federal Rules of Evidence, the evidence of Mr. Henry's healthcare fraud would never be admissible in his bankruptcy case taking place (at the very least 3 years (and at the most almost 4 1/2 years) later; and, more significantly, the evidence of his allegedly false statements on a personal bankruptcy petition filed in 2005 would surely not have been admissible in a timely trial in 2002 on the healthcare issues as it would not have even occurred.[11]  And although Rule 404(b) does

---

[10]The government indicates that it will attempt to introduce evidence of incidents relating to the healthcare fraud incidents which occurred prior to the earliest count in the indictment and out of the statute of limitations.

[11]This highlights yet another issue concerning the pre-indictment delay in this matter, the subject of a separate motion. An argument can clearly be made that the Government was hovering around waiting for over 3 years for Mr. Henry to do something wrong

not automatically bar evidence of a bad act that occurred after the crime charged -- <u>vis-a-vis</u> whether the bankruptcy evidence would be admissible in a trial on the medicaid fraud case -- Counts 1 through 64 -- "the temporal (as well as the logical) relationship between a defendant's later act and his earlier state of mind attenuates the relevance of such proof," <u>United States v. Watson</u>, 894 F.2d 1345, 1349 (D.C.Cir.1990). And even more telling with respect to the impropriety of the joinder in this matter, the "acts" comprising the bankruptcy fraud (Counts 65 <u>et</u> <u>seq.</u>) could only be used to show Mr. Henry's intent "when they are fairly recent **and in some significant way connected with prior material events**, <u>United States v. Childs</u>, 498 F.2d 169, 174 (D.C.Cir. 1979) (emphasis supplied).

In the instant matter, under no theory would the evidence of the bankruptcy fraud -- allegedly falsifying information on a personal bankruptcy petition -- be admissible in a Medicaid fraud trial against the CEO of a corporation 4 years previous.

In evaluating the propriety of joinder, a reviewing court should consider whether the proof to be offered in support of each set of charges overlaps such that a joint trial of the charges serves the interest of judicial economy. <u>See</u> <u>Jackson</u>, 562 F.2d at 795. Such interests, "cannot, however, trample a defendant's right to a fair trial." <u>Nicely</u>, 922 F.2d at 855. In <u>Nicely</u>, the D.C.

---

just so they could throw more fuel onto the fire in the name of additional counts. This is ever more supported by the fact that the Government intends to try its "stronger" case first should the counts be severed -- and it has determined that its Bankruptcy case is the stronger case.

Circuit held that two conspiracies were improperly joined, in part because one of the conspiracies took place over a long period of time whereas the second "scheme had run its course within a couple of weeks," Id.

Similarly, in the instant matter, the Medicaid Fraud counts (1-64) took place over a 16-month period; while 3-years later, the Bankruptcy petition was filed on one, specific day. Additionally, there is no commonality between the victims of the Medicaid Fraud and the victims of the alleged Bankruptcy Fraud -- one being the government, and the other being private creditors. These different timeframes and victims further support the defendant's petition to sever them for trial under Nicely. The D.C. Circuit has specifically held that commonality of a defendant -- Mr. Henry -- is insufficient to justify joinder of otherwise unrelated schemes.

Thus, for all of the reasons stated herein, under Rule 8(a), it is respectfully requested that this Court find that Counts 63 through 72 have been improperly joined and thus must be severed for trial.

    **2.    Even if Joinder were Proper, the Court Should Grant a Severance Under Rule 14 to Prevent Prejudicial Spill-Over of Evidence.**

Even if the Court determines that the Counts are all properly joined in a single indictment under Rule 8, the Court should nonetheless grant a severance pursuant to Rule 14 to avoid prejudice to the defendant. Under Rule 14, "[i]f the joinder of offenses. . .appears to prejudice a defendant. . .the court may order separate trials of counts. . .," Fed.R.Crim.P. 14(a).

As this Circuit has recognized, the danger of prejudice from failure to grant a severance is as follows:

> (1) [the defendant] may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer criminal disposition on the part of the defendant on which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. A less tangible, but perhaps equally persuasive element of prejudice may reside in a latent hostility engendered by the charging of several crimes as distinct from only one.

Drew, infra at 88.

This lead case on severance required the Court to vacate the convictions and re-try the matter on an indictment which charged only 5 counts. In applying these three prongs to the instant matter in which there are 72 counts and only 1 defendant, prejudice is obvious -- as clearly all of the elements are easily met.

First, it would be virtually impossible for the defendant to defend on 64 counts covering the time period of 2001-2002 and then provide a whole different "explanation" for crimes allegedly

committed 4 years later in a Bankruptcy petition. For if the jury were to hear that Mr. Henry committed 64 crimes in 2001 and 2002 and different crimes 4 years later -- the mere amount of crimes charged will prevent the defendant from putting on a clear defense of 72 counts.

Similarly, and as to prong #2, even if the jury were to determine that Mr. Henry had no intent to commit a healthcare fraud (64 times) it would be very difficult (and arguably impossible) for them to put that aside and separately determine whether or not Mr. Henry committed a bankruptcy fraud.[12]

The most pertinent prong to the instant matter, however, is found in #3:

> A less tangible, but perhaps equally persuasive element of prejudice may reside in a latent hostility engendered by the charging of several crimes as distinct from only one.

Mr. Henry is, in essence, charged with 72 crimes. There is no question that it will be very difficult -- if not impossible -- for any jury to separate all 72 of these crimes without buying into the Government's obvious theory of "where there's smoke there's fire." At the very least, it is so prejudicial to the defendant that he has been charged in this manner that the Court must grant this motion to sever -- at least it will facilitate the

---

[12]One of the Counts in the Bankruptcy fraud case involves his omission in listing firearms on the petition. Even if the Government were not able to prove Mr. Henry guilty of the medicaid fraud, in proving this Count in the Bankruptcy fraud -- the mere discussion of Mr. Henry possessing firearms in the District will affect their ability to compartmentalize the evidence -- thus potentially criminalizing the medicaid fraud simply because of the reference to a gun in the bankruptcy fraud.

12

ability to keep the subject matter separate:  healthcare fraud as a CEO of a company vs. personal bankruptcy fraud as an average citizen.  See Gregory v. United States, 369 F.2d 185, 189 (D.C.Cir. 1966) ("where evidence of more than one crime offered to the jury because more than one crime is charged in the indictment, the evidence as to all crimes tends to cumulate to prove each, thus prejudicing the defendant in his right to a separate consideration of his guilt or innocence on each charge")(citing Drew, 331 F.2d at 91); United States v. Foutz, 540 F.2d 733, 738 (4th Cir. 1976)(when one part of the government's case is weaker than another, a court cannot assume that the jury will properly compartmentalize the evidence into "separate intellectual boxes")(quoting Bruton v. United States, 391 U.S. 123 (1967) (quotation marks omitted).

And finally, it is anticipated that the strongest argument the Government will make in its attempt to outweigh the extreme prejudice a 72-count trial will wield on this defendant is that of judicial economy.  Interestingly, in this case, judicial economy will be best served if the counts in this matter are severed.

It would be natural to think that severing out the last 8 counts of a 72-count indictment would not really serve the interests of justice when the defendant (and the Court) would still be facing a 64-count medicaid fraud trial from (in 2007) 5 years ago.  However, as was referenced at the status hearing and earlier

13

in the instant motion, the government has indicated[13] that it will lead with its stronger case -- the Bankruptcy Fraud case.  And, as referenced in the joint status report, the bankruptcy fraud case will be a 3-4 day trial, at most; rather than upwards of a month-long trial.  There are only 100 documents in the bankruptcy case -- versus the thousands of documents potentially in the Medicaid Fraud case.  Thus, even considering judicial economy, the scales are tipped towards severance these completely separate matters.

In short, the Court should sever the Medicaid Fraud Counts from the Bankruptcy Fraud counts to avoid extreme prejudice to the defendant.

**WHEREFORE**, the reasons stated herein, and consistent with the caselaw in this jurisdiction pursuant to Rules 8(a) and 14 of the Federal Rules of Criminal Procedure, it is respectfully requested that this Court sever, for separate trials, Counts 1 through 64 from Counts 65 through 72.

Respectfully submitted,

_____
Kathleen A. Dolan

---

[13] Even if the government changes its mind and chooses to lead with the Medicaid Fraud case, severing out the other counts would cut 3 or 4 days off of the month-long trial.  And the Government has also indicated that a conviction in one case may preclude trial in the other -- also a factor weighing towards judicial economy.