# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| | : | **Criminal No. 1:06-CR-00079-CKK** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **RICARDO HENRY,** | : | |
| **Defendant** | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SEVER COUNTS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits its Opposition to Defendant's Motion to Sever Counts ("Motion" or "Mot."). As set forth below, defendant's Motion should be denied as all counts in the indictment are properly joined and should not be severed.

## INTRODUCTION

A grand jury has returned a 72-count Second Superseding Indictment ("the indictment") charging defendant with various acts of health care fraud, bankruptcy fraud, and money laundering. The indictment tracks defendant's efforts to obtain assets, including a 2001 Porsche Carrera Cabriolet, through health care fraud, and a continuing effort to retain assets, including the same Porsche, through bankruptcy fraud and money laundering.

The indictment's first 68 counts describe false statements to the United States to obtain and retain assets: Counts One through 62 charge defendant with causing false statements/claims to be submitted to Medicaid, and Counts 64 through 68 charge defendant with making various false statements to the United States Bankruptcy Court for the District of Columbia to retain assets through concealment.

One asset in particular, the 2001 Porsche Carrera, shows the intertwined nature of the health care fraud and the bankruptcy fraud/concealment.  Defendant purchased the Porsche in November 2000 with $113,000 (including financing costs), a substantial portion of which he obtained through his health care fraud scheme.  The Porsche constitutes the largest proceed from the health care fraud by far, amounting to approximately 25 percent of the overall economic loss from that fraud.  To retain this ill-gotten asset, defendant failed to report the Porsche as an asset in his subsequent bankruptcy petition in 2005.  The Porsche also forms the largest proceed of the bankruptcy fraud, as its value constitutes approximately one-third of the total bankruptcy loss.  Thus, Count 63 of the indictment, which charges defendant with bankruptcy fraud, specifically alleges that defendant used the bankruptcy laws "to retain ill-gotten assets that he acquired as a result of the health care fraud he committed."

Counts 69 and 70 charge defendant with money laundering relating to the Porsche.  Those charges stem from the arrangement defendant made to register the Porsche in New York state in a relative's name in September 2005 just days after filing for bankruptcy.  Defendant later registered the Porsche in the District of Columbia in his own name in November 2005.  The indictment alleges that defendant engaged in laundering by concealing and disguising the location, ownership, and control of the Porsche, which represented the proceeds of two separate but related specified unlawful activities:  health care fraud and bankruptcy concealment.

Because the health care fraud and bankruptcy fraud are related schemes that utilized false statements to obtain and retain assets, in particular the valuable Porsche, all the counts of the indictment allege a single unitary scheme.  Accordingly, all the counts in the indictment are joined properly and should not be severed.  Defendant's motion should be denied.

2

## BACKGROUND

1. **Health Care Fraud**

Defendant submitted numerous false claims to Medicaid through a company, Insight Therapeutic Services, Inc. ("Insight"), which was licensed to provide mental health services to residents of the District of Columbia. Defendant held the titles of President, CEO, Secretary, and Treasurer of Insight. Defendant hired an employee to handle Insight's billing, but it was defendant, and defendant alone, who gave the billing employee detailed instructions for the claims submitted to Medicaid. The billing employee had no access to patient files, but instead defendant provided the employee with the information upon which Insight's Medicaid claims were based.

Between October 20, 1999, and August 30, 2002, defendant caused Insight to submit a multitude of false claims to Medicaid. For example, defendant caused a host of false claims to be submitted using Medicaid numbers of family members of patients who were not themselves patients. Defendant also caused Insight to submit false claims to Medicaid for services to patients whose treatment by Insight had long since ceased. Counts Two and Three of the indictment provide excellent examples of false claims with which the defendant is charged. They relate to JM-083,[1] a patient defendant began seeing on February 15, 1999. For each session with the patient, defendant sought a payment of $36.00 from Medicaid. As required by Medicaid regulations, progress notes document the treatment received by JM-083. JM-083's patient file contains more than 30 progress notes documenting sessions with the patient, some of which

---

[1] The identification JM-083 is comprised of the first initials of the patient's first and last name together with the last three numbers of the patient's Medicaid number.

3

defendant authored and signed.  The last progress note appears on June 21, 2000.  On that date, defendant wrote and signed a progress note which read, in pertinent part: "The client is effectively terminated as of today.  RFH, Ph.D."[2]

Nonetheless, defendant continued to seek payments from Medicaid for services to JM-083 for more than ten months after the patient's treatment was terminated.  In all, defendant caused Insight to submit 44 claims for sessions that occurred after he had terminated the relationship with JM-083 and for which no progress notes exist.  Count Two charges that defendant caused a false claim to be submitted for a session with JM-083 that defendant claimed occurred on April 5, 2001.  This date represents the first false claim that fell within the applicable statute of limitations for a stand-alone false statement charge under 18 U.S.C. § 1035.  Count Three charges defendant with the last false claim filed with Medicaid regarding JM-083.   Other false claims were not charged individually, but are included in the overall health care fraud alleged in Count One.[3]

---

[2]  As the indictment charges, it was part of the scheme and artifice that defendant claimed to be a Ph.D. when he was not so accredited. The government has transcripts from the Fielding Institute and other schools which demonstrate that defendant was not awarded any degree.

[3]  The indictment organizes and narrows the myriad of potential charges which could be brought against defendant for submitting false claims in violation of 18 U.S.C. § 1035.  It charges only the first and last dates, within the applicable statute of limitations, on which defendant submitted false claims regarding various patients.  That selectivity accounts for the "notably [] large gap" between August 2001 and February 2002 that defendant mentions in his motion.  Mot. at 2.  In his motion, defendant alternates between directing the Court's attention to this "gap," and his contradictory claim that he has been overcharged.  Mot. at 6.  In fact, the government intends to introduce numerous false claims at trial regardless whether they are individually charged under 18 U.S.C § 1035 because they fall within the scope of the overall health care fraud alleged in Count One.

At defendant's direction, Insight also billed Medicaid routinely for treatment sessions on dates when no treatment was provided and on dates when patients had cancelled their treatment sessions. Yet another example of defendant's methods to defraud Medicaid involved using an inappropriate "Group Therapy" billing code to receive more money from Medicaid in instances when Group Therapy had not been provided. An analysis of more than 80 patient files (over 50% of Insight's total claims during the indictment's time period) reveals that over 80% of claims Insight submitted to Medicaid during the indictment's time period were false. Just these claims resulted in a loss of more than $250,000.[4]

Using the money that he obtained mostly from defrauding Medicaid, defendant acquired assets, including a 2001 Porsche Carrera Cabriolet that defendant bought on November 30, 2000. Defendant wrote a $15,000 check from the Insight account as a down payment on the Porsche, and financed the remainder of the car's purchase price with a loan from Suntrust Bank. Defendant ultimately paid that loan in full. The total amount of money defendant paid for the Porsche, including finance costs, amounted to approximately $113,000. Defendant obtained a substantial portion of that money from the Medicaid fraud.

Defendant cared greatly for and about the Porsche. He took immaculate care of it and drove it rarely to preserve its value. He was knowledgeable about the technical aspect of Porsche automobiles, and he also purchased accessories for it, including Porsche driving gloves and Porsche sunglasses. Defendant was well-known at the dealership from which he purchased the Porsche and at which he had it serviced regularly.

---

[4] If the 80% rate of false billing is applied over all the claims in the indictment's time period, the loss figure would be $480,000.

2.      **Bankruptcy Fraud**

As of August 2005, defendant had amassed credit card debt of over $130,000.  He

also owed the Internal Revenue Service approximately $20,000.  Yet defendant still owned the

2001 Porsche Carrera Cabriolet, which had been driven less than 7,000 miles in its lifetime and

which retained significant value.  In order to discharge his debts, defendant filed a petition for

bankruptcy under Chapter 7 of Title 11 of the United States Code on August 25, 2005.  While he

listed all of his debts in the bankruptcy petition, defendant failed to list the Porsche as an asset,

despite the fact that a direct question on the petition required him to list all vehicles he owned.  In

fact, in response to that question, defendant listed only a Chevrolet Tracker valued at $5,000.

Moreover, rather than disclose the Porsche on the bankruptcy petition as required, defendant

instead paid a relative to register the car in New York in early September 2005 under the

relative's name, as well as cause New York car insurance to be purchased for the car under the

relative's name.  In November 2005, defendant registered the Porsche in the District of Columbia

in his own name.

Defendant also provided false statements to the Bankruptcy Court regarding the

amount of cash in his possession (Count 65), whether he owned firearms (Count 66), and

whether he had sold real estate within the preceding year (Count 67).  Defendant also failed to

identify a Jamaican bank account that he maintained (Count 68).  Defendant received an order

discharging him of his debts on January 24, 2006.  The bankruptcy case closed on March 10,

2006.  As of that date, defendant maintained ownership of the Porsche that had been purchased

with money substantially acquired from the health care fraud.  The government seized the

Porsche in March 2006 from defendant's parking space at his residence.

### 3.    Money Laundering

Counts 69 through 72 charge defendant with money laundering.  Counts 69 and 70 relate to defendant's conduct regarding the 2005 New York registration of the Porsche.  Count 69 sets forth health care fraud as the specified unlawful activity of defendant's Porsche laundering, and Count 70 lists bankruptcy fraud as the specified unlawful activity of the same act of laundering.  Counts 71 and 72 charge defendant with laundering cash that he withdrew from Suntrust Bank on two separate dates: $6,000 on August 18, 2005 (the date he signed his bankruptcy petition), and $4,000 on August 25, 2005 (the date he filed his bankruptcy petition).  In his bankruptcy petition, defendant stated under penalty of perjury that he possessed only $20 cash, and that his Suntrust Bank account contained only $900.  A search of defendant's residence in March 2000 recovered $9,000 consisting of bank-wrapped $100 bills from a safe in defendant's bedroom closet.

## SUMMARY OF APPLICABLE LAW

Under Rule 8(a) of the Federal Rules of Criminal Procedure, the government may join multiple offenses in a single indictment when the offenses are "of the same or similar character or are based on the same act or transaction or [are based on] on two or more acts or transactions connected together or constituting parts of a common scheme or plan."   The court may order severance of properly joined offenses where "[i]t appears that a defendant or the government is prejudiced by a joinder of offenses . . ." Fed. R. Crim. P. 14.

Joinder is "the rule rather than the exception" given the court's "dominant concern with judicial [and prosecutorial] economy."  United States v. Treadwell, 566 F. Supp. 80, 86

(D.D.C. 1983) (brackets in original) (citation and quotation marks omitted).  Thus, Rule 8(a) has

been construed liberally in favor of joinder because "this court strikes 'a balance in favor of joint

trials.'"  United States v. Clarke, 24 F.3d 257, 262 (D.C. Cir. 1994) (citation omitted).  See also

United States v. Neill, 964 F. Supp. 438, 453 (D.D.C. 1997) ("There is, of course, a preference

for joint trials."); Zafiro v. United States, 506 U.S. 534, 539 (1993) ("There is a strong preference

for joint trials in the federal system where that can be accomplished without substantial prejudice

to a specific trial right of the defendant.").  See also United States v. Long, 905 F.2d 1572 (D.C.

Cir. 1990); United States v. Manner, 887 F.2d 317, 324 (D.C. Cir. 1989).

       In determining whether two or more acts or transactions are "connected" under

Rule 8(a), the court should look to whether there is a "logical relationship" between them and/or

whether there exists "a substantial overlap of issues and evidence."  United States v. Perry, 731

F.2d 985, 990 (D.C. Cir. 1984); United States v. Treadwell, 566 F. Supp. 80, 85 (D.D.C. 1983).

As to whether counts are of the "same or similar character," courts have defined that provision to

mean "resembling in many respects, somewhat alike, or having a general likeness."  Id.  See also

United States v. Jackson, 562 F.2d 789, 796 (D.C. Cir. 1977) (Rule 8(a) permits joinder of same

or similar counts "even if they are entirely unrelated to one another").

       It is well-established that the defendant bears the heavy burden of proving

prejudicial joinder under Rule 14.  United States v. Spitler, 800 F.2d 1267 (4th Cir. 1986).  The

risk of prejudice must be compelling.  United States v. Cross, 928 F.2d 1030 (11th Cir. 1989).

The test for determining "compelling prejudice" is the jury's ability to follow the trial court's

instructions and separate evidence relating to each count.  Id. at 1039; see also United States v.

Leavitt, 878 F.2d 1329 (11th Cir. 1989).  In other words, where adequate instructions are

available, a defendant cannot make out compelling prejudice. United States v. West, 877 F.2d

281 (4th Cir. 1989). Moreover, no undue prejudice results in instances where charges sought to

be severed would be admissible under Rule 404(b) of the Federal Rules of Evidence. United

States v. DeLoach, 654 F.2d 763, 769 (D.C. Cir. 1980).[5]

## ARGUMENT

Defendant's motion should be denied, as all of the indictment's counts are joined

properly under Rule 8(a) of the Federal Rules of Criminal Procedure. First, the counts describe a

common scheme or plan to obtain and retain assets by making false statements to the United

States. Second, the charges possess the same or similar character. Third, no counts should be

severed pursuant to Rule 14 of the Federal Rules of Criminal Procedure, since (a) defendant

would suffer no undue prejudice from joinder given that the health care fraud and bankruptcy

---

[5]  Though defendant complains of the number of counts in the indictment, Mot. at 5, the
number of charges is not a factor courts consider in determining joinder or severance motions,
and defendant cites no authority indicating otherwise. Also, while defendant asserts that a
comprehensive search revealed no other case in which a single defendant was charged with
"anywhere near 72 counts," Mot. at 5, the case law in fact is replete with such examples in
directly analogous cases. See, e.g., United States v. Hall, 434 F.2d 42 (1st Cir. 2006) (single
defendant indicted and convicted of, inter alia, 163 counts of money laundering); United States v.
Catena, 500 F.2d 1319, 1325-26 (3rd Cir. 1974) (affirming denial of motion to sever over 100
counts of Medicare fraud charged against single defendant physician); United States v. Gilliard,
133 F.3d 809 (11th Cir. 1998) (single defendant indicted and convicted of 100 counts of
submitting false claims to Medicare and Medicaid); United States v. Nagalinam, 166 F.3d 1216,
1998 WL 739822 (6th Cir.) (single physician defendant indicted and convicted of 95 counts of
illegal sales of drug samples and 28 counts of mail fraud relating to miscoding); United States v.
Rutgard, 116 F.3d 1270 (9th Cir. 1997) (single ophthalmologist defendant indicted of 217 counts
alleging, inter alia, Medicare false statements and mail fraud, and convicted of 132 counts);
United States v. Jaramillo, 98 F.3d 521 (10th Cir. 1996) (single psychiatrist defendant indicted
and convicted of 118 counts of Medicare fraud, 95 counts of Medicaid fraud, and 15 counts of
filing false claims with CHAMPUS programs); United States v. Skodnek, 933 F. Supp. 1108 (D.
Mass. 1996) (single psychiatrist defendant indicted and convicted of 126 charges comprised of
80 counts of Medicare false claims, 53 counts of mail fraud, one count of obstruction of justice,
and one count of witness intimidation).

fraud schemes would be mutually admissible in separate trials under Rule 404(b) of the Federal Rules of Evidence, and (b) the jury will be able to distinguish easily between the health care fraud and bankruptcy fraud evidence.  Fourth, the Court's interest in efficiency strongly counsels in favor of a single trial, particularly since a separate bankruptcy fraud trial would take nearly as much time to complete as would a single trial on the indicted charges.

## I.     ALL COUNTS IN THE INDICTMENT
   ## ARE PART OF A COMMON SCHEME OR PLAN.

The indictment as a whole describes one unitary scheme:  defendant's efforts to obtain and retain assets by making false statements to the United States in the District of Columbia, and by defrauding the United States in the District of Columbia.  The Porsche runs through the indictment.  Defendant used a substantial portion of the proceeds of the health care fraud to purchase the Porsche.  To retain the ill-gotten Porsche when he declared bankruptcy, defendant concealed the Porsche from the Bankruptcy Court and attempted to disguise its true ownership by inducing a relative to register the car in New York in the relative's name. Defendant's interest in acquiring and maintaining ownership of the Porsche thus forms the motivation underlying the health care fraud, the bankruptcy fraud, and the money laundering scheme and constitutes a critical piece of the government's proof at trial.  Even if the Court were to sever any of the indicted charges, the government would still expect to introduce evidence relating to how defendant acquired the car (health care fraud) and how he attempted to keep it (bankruptcy fraud and money laundering) in any trial.

Courts in this jurisdiction and others have held that in instances like this, where a defendant acquires assets through one fraud and attempts to retain them by perpetrating another,

both frauds form a "common scheme or plan" under Rule 8(a) and belong in one trial. For instance, in United States v. Treadwell, 566 F. Supp. 80, 86 (D.D.C. 1983), the defendant was charged with fraudulently misappropriating money and assets from housing projects she managed. The defendant was also charged with committing tax evasion by failing to report the stolen income on her tax returns. Defendant sought severance of the tax charges from the other fraud charges, arguing in part that the underlying fraud did not generate the tax evasion. Judge Penn denied defendant's motion to sever, holding that the tax evasion counts were properly joined with charges of false statements, mail fraud, and wire fraud because the government intended to prove that "the money alleged to have been fraudulently obtained by defendant constitutes the unreported income in the tax counts." Id. Similarly here, the government intends to prove that the Porsche fraudulently obtained by defendant was concealed from the Bankruptcy Court. As in Treadwell, the Court should find that both frauds form one common scheme.

In an unpublished case directly on point (United States v. Cooper, 134 F.3d 364, 1998 WL 29258 (4th Cir.)), the Fourth Circuit held that bankruptcy fraud counts were properly joined with non-bankruptcy counts where the bankruptcy counts were committed as part of an effort to conceal assets wrongfully obtained from an otherwise unrelated set of criminal offenses. In United States v. Cooper, the court held that bankruptcy fraud and bank robbery charges were properly joined because

> the evidence clearly demonstrates that the bankruptcy fraud and
> bank robbery charges were parts of a common scheme. Cooper's
> plan involved stealing money from the ATM's he serviced and,
> with the intent to use this money to repair and improve his home,
> concealing these assets from the bankruptcy trustee. One offense
> stemmed from the other . . . There is also a significant overlap in
> evidence regarding Cooper's motive for committing both the bank

robberies and bankruptcy fraud.  Cooper had an opportunity to
acquire significant sums of money from his access to the ATMs
and a plan for using and concealing those assets from the
bankruptcy trustee. For these reasons, we conclude that initial
joinder was proper under Rule 8.

(emphasis added).  The court further affirmed the denial of the defendant's motion to sever since

"[t]he possibility of prejudice to [defendant] at trial was greatly diminished by the substantial

overlap of evidence."  Id. at *1.  As in Cooper, defendant here had an opportunity to acquire

significant sums of money by committing health care fraud, and then he perpetrated a subsequent

fraud to conceal those proceeds from the Bankruptcy Court.  Just as in Cooper, the counts here

are properly joined.

United States v. Herring, 2001 WL 25661 (E.D. La.) (unpublished) also addressed

facts quite similar to these.  In Herring, the indictment alleged that the defendants obtained

money by Medicare fraud and then later used that money to commit bankruptcy fraud and

pension fraud.  The court denied the defendants' motion to sever the bankruptcy fraud and

pension fraud counts from the health-care fraud charges, holding they formed a common scheme

or plan under Rule 8(a) because "the Medicare fraud allegations and the bankruptcy and pension

fraud allegations are inextricably intertwined in that the goal of the alleged criminal activities

was to obtain money to fund inter alia real estate endeavors the benefits of which were to accrue

to the defendants."  As here, "[w]hen Medicare sought repayment of funds . . . the agencies under

the control of the defendants allegedly declared bankruptcy and attempted to shield the fruits of

their alleged illegal actions through transfers of property."  Id.

These cases and others stand for the proposition that when a significant asset

connects several frauds, the frauds form a "common scheme or plan" under Rule 8(a).  See also

United States v. Bennett, 702 F.2d 833 (9th Cir. 1983) (fraud and tax-evasion counts properly

joined where tax-evasion counts "were occasioned mostly by the necessity of concealing the

illegal proceeds of the offenses charged in the remaining counts"); United States v. Dominguez,

226 F.3d 1235, 1238-39 (11th Cir. 2000) (affirming joinder of drug charges and mortgage-fraud

charges because "proof of the [drug-related charges] provides the motive and necessity for the

[mortgage fraud-related charges]" and "the fact that one illegal activity provides the impetus for

the other illegal activity is sufficient to constitute a common scheme for joinder purposes");

United States v. LaRouche, 896 F.2d 815, 830 (4th Cir. 1990) (joinder of mail fraud and tax fraud

counts proper where defendant failed to report proceeds from fraudulently-obtained loans to

Internal Revenue Service).[6]

       Count 63 (Bankruptcy Fraud) particularly underscores the extent of the common

scheme formed by the health care and bankruptcy frauds. That count alleges a violation of 18

U.S.C. § 157, which specifically requires "a scheme or artifice to defraud" independent of the

bankruptcy filing. See United States v. Naegele, 341 B.R. 349, 364 (D.D.C. 2006) (Friedman, J.)

(18 U.S.C. § 157 "contains three elements: (1) the existence of a scheme to defraud or intent to

later formulate a scheme to defraud and (2) the filing of a bankruptcy petition (3) for the purpose

of executing or attempting to execute the scheme"). Section 157 was patterned after the mail

and wire fraud statutes. See 5 U.S.C.C.A.N. 3340, 3366-67 (1994). Count 63 identifies the pre-

---

[6] United States v. Nicely, 922 F.2d 850 (D.C. Cir. 1991), cited by defendant, Mot. at 9, has no bearing on this analysis. That multi-defendant case was decided under Rule 8(b), not 8(a), and the court's holding that the joinder of two unrelated conspiracies was improper because "the government's justification for joinder of the conspiracies was expounded in thoroughly conclusory terms" (citation omitted) is inapposite. Id. at 854. Unlike in Nicely, and as discussed infra, here the two schemes are connected by the acquisition and retention of a shared significant asset, and accordingly there is a significant overlap in proof.

existing scheme as health care fraud, alleging that defendant used the bankruptcy filing "to retain

ill-gotten assets that he acquired as a result of the health care fraud he committed."  Indictment at

12, ¶ 34.  As Count 63 requires the government to prove the health care fraud in that allegation

even if all the other counts in the indictment are severed, it demonstrates the interwoven nature

of the health care fraud and bankruptcy fraud schemes.

As Count 63 and the above-cited cases demonstrate, defendant's health care fraud

occasioned and provided the impetus for his bankruptcy fraud, as the largest asset of the

bankruptcy fraud was acquired from the health care fraud.  The above-cited authorities and others

demonstrate that both frauds form a common scheme or plan and that their joinder is proper.

## II.    THE HEALTH CARE FRAUD AND BANKRUPTCY FRAUD COUNTS ARE OF THE SAME OR SIMILAR CHARACTER.

As an independent basis of joinder under Rule 8(a), the health care fraud

allegations and the bankruptcy fraud charges are of the same or similar character.  The counts all

charge that defendant made false statements in documents submitted to the United States.  Thus,

the nature of the claims (false statements) is common, and they further share an identical victim[7]

and recipient – the United States.[8]  Defendant also submitted the false statements to the United

States in the same location:  the District of Columbia.  Further, the allegations share a common

motivation of obtaining and retaining a Porsche through the submission false statements.

---

[7]  While other creditors were also victims of the bankruptcy fraud, the United States was a creditor/victim in its own right, as defendant sought to discharge a $20,000 debt to the Internal Revenue Service in his bankruptcy petition.

[8]  In addition to filing his bankruptcy petition with the Bankruptcy Court, defendant affirmed the veracity of the statements therein under oath to the Bankruptcy Trustee who was appointed and supervised by the United States Trustee.

On facts such as these, courts have held that false statements under one statute possess the same or similar character for joinder purposes as do false statements under another. For example, in United States v. Alexander, 135 F.3d 470, 475-76 (7th Cir. 1998), the court held that bankruptcy fraud charges like these are of the same or similar character to mail fraud charges relating to false insurance claims, since each allege a "materially false representation with the intent to deceive a specified victim." The court further explained that "[c]ounts may be joined pursuant to this prong of the rule if the offenses 'are of like class,' even if they are not temporally or evidentially related." Id. Similarly, in United States v. Levine, 983 F.2d 165, 167 (10th Cir. 1992), the court found mail fraud and bank fraud charges to be properly joined where both frauds resulted from the defendant's attempt to defraud victims through the submission of falsified documents; "[t]he indictment alleged that Mr. Levine attempted to defraud the governmental entities with falsified receipts, and attempted to defraud his bank through falsified loan documentation."

Even in instances where, unlike here, joined charges do not share the common characteristic of alleging a false statement, courts have found they possess the same or similar character when they relate to disparate efforts to obtain a common asset. See, e.g., United States v. Adeosun, 49 F. Supp.2d 7, 13 (D.D.C. 1999) (Robertson, J.) (denying motion to sever because counts charging money laundering, bank fraud, possession of false identification, structuring, and access device fraud are all of the same or similar character or based on common scheme or plan because they related to efforts to obtain bank loan by fraud); United States v. Koen, 982 F.2d 1101, 1111-12 (7th Cir. 1992) (embezzlement, mail fraud, and arson charges same or similar

15

character and properly joined because charges related to defendant's mishandling of
organization's funds); United States v. Kaplan, 895 F.2d 618, 621 (9th Cir. 1990) (mail fraud
counts relating to false insurance claims submitted by physician were of similar character and
properly joined with counts alleging that physician had prescribed controlled substances for other
than legitimate medical purposes).

       Here, defendant made a host of false statements to Medicaid for the purpose of
acquiring an asset, the Porsche, and then made false statements to the Bankruptcy Court to retain
that asset and others.  The counts share the same or similar character because they allege false
statements in documents submitted to the United States, and they all relate to an effort to acquire
and retain assets through false statements.  Rule 8(a) permits their joinder.

**III.    NO COUNTS SHOULD BE SEVERED SINCE DEFENDANT
         WOULD SUFFER NO UNDUE PREJUDICE FROM THE JOINDER.**

       The law in this jurisdiction and elsewhere is that "[a]bsent substantial prejudice to
the accused, offenses properly joined under Rule 8 should be jointly tried to conserve judicial
resources, [alleviate] the burdens on citizens serving as jurors, and [avoid] the necessity of
having witnesses reiterate testimony in a series of trials."  Treadwell, 566 F. Supp. at 86.  To
meet Rule 14's exacting standard, defendant must demonstrate substantial and undue prejudice,
since Rule 8 "authorizes some prejudice" against a defendant.  United States v. Turoff, 853 F.2d
1037, 1043 (2d Cir. 1988).  Here, defendant cannot demonstrate that he would suffer substantial
and undue prejudice, since (a) the bankruptcy fraud charges he seeks to have severed would be

admissible in a separate health care fraud trial, and vice-versa;[9] and (b) the jury will be able to distinguish between the charges easily.

### A.     The Bankruptcy Fraud and Health Care Fraud Charges Would Be Mutually Admissible in Separate Trials.

The health care fraud allegations would be admissible under Rule 404(b) of the Federal Rules of Evidence in a separate bankruptcy trial and vice-versa. Setting aside that Count 63 (Bankruptcy Fraud) specifically charges that defendant used the bankruptcy laws to retain ill-gotten assets from the health care fraud – thereby requiring the government to prove the health care fraud in that count – the health care fraud allegations would be admissible to prove defendant's intent in making false statements to the Bankruptcy Court. The converse is also true: in a separate trial on the health care fraud charges, the core question will be whether defendant knew that the claims submitted to Medicaid were false and whether he intended to submit false claims. Defendant's intent will be a central issue at (any) trial, and to prove the requisite intent as well as rebut an implied or express defense of mistake or lack of knowledge, the government would be entitled to introduce other false statements under Rule 404(b).

The law here and elsewhere is that the government has a particular need for 404(b) evidence when intent is at issue. For example, in United States v. DeLoach, 654 F.2d

_____

[9]  That the health care fraud charges and bankruptcy fraud allegations form a common scheme or plan further undercuts defendant's claim that the joinder would cause him unfair prejudice. The D.C. Circuit has noted that when charges form a common scheme or plan, not only may they be joined, but they "belie[] the differently focused need for severance" because "the presence of a common scheme or plan . . . provides a permissible reason to introduce evidence of other crimes under Rule 404(b) of the Federal Rules of Evidence," and "offenses joined under Rule 8(a) and 13 because they are parts of a common scheme have a greater chance of surviving a Rule 14 motion for severance than do offenses joined simply because they are 'of the same or similar character.'" United States v. Burkley, 591 F.2d 903, 920 (D.C. Cir. 1979).

763, 769 (D.C. Cir. 1980), where the government charged a defendant similarly with filing false statements, the government was allowed to introduce as Rule 404(b) evidence the defendant's prior swindles to prove his intent to file the charged false statements. The court noted, "Where intent is the only real issue, as in this case, the government may fairly anticipate the defense of mistake and lack of knowledge and put this evidence in as part of its case in chief," because "[o]n the issue of intent, which is far harder to prove by extrinsic evidence than [defendant's] identity or the falsity of the statements, the government's need for the evidence is correspondingly greater." The same reasoning applies here. To prove defendant's intent in filing false statements either with Medicaid or the Bankruptcy Court, the government has a pressing need to introduce all of the false statements charged in the indictment.

Similarly, in United States v. Clark, 184 F.3d 858, 866 (D.C. Cir. 1999), the court affirmed the denial of a motion to sever attempted bribery and felon-in-possession charges because the latter count "was admissible as evidence of [the defendant's] motive for the attempted bribery – namely, to avoid arrest for that violation," and "the bribery was in turn admissible as evidence that [the defendant] had knowledge of the gun." Thus, "severance would have accomplished little in this case, since proof of each crime would have been admissible in the separate trials." See also United States v. Gambler, 662 F.2d 834, 835 n.2 (D.C. Cir. 1981); United States v. Jensen, 41 F.3d 946, 957 (5th Cir. 1994) (false statements in a bankruptcy filing admissible under Rule 404(b) to prove defendant's knowledge of real estate fraud); United States v. Neill, 964 F. Supp. 438, 454 (D.D.C. 1997) ("The majority, if not all, of the obstruction evidence relating to Count Seven, of which the defendant chiefly complains, would have been admissible in a separate trial of Count Six [making and submitting a false tax return], because it

is probative of the defendant's motive, plan, knowledge or absence of mistake in failing to report his signature authority over foreign bank accounts.").

Defendant's attempt to rely on the fact that the bankruptcy fraud succeeded the health care fraud by several years (Mot. at 6-7)[10] fails because the D.C. Circuit has expressly rejected that argument for purposes of Rule 404(b): "Rule 404(b) draws no distinction between bad acts committed before and bad acts committed after the charged offense. Nor do our decisions. In each case the question Rule 404(b) poses is whether the bad acts evidence is relevant to something provable other than the defendant's character." United States v. Latney, 108 F.3d 1446, 1449 (D.C. Cir. 1997).[11] Here, the health care fraud false statements bear directly on defendant's intent to make false statements in his bankruptcy petition, and vice-versa. Because the charges would be mutually admissible in separate trials, defendant would not suffer undue prejudice from their joinder.

---

[10] Notwithstanding defendant's complaint that several years elapsed between the health care fraud and bankruptcy fraud acts, such a timeframe is typical in bankruptcy fraud and money laundering schemes. As the court stated in United States v. Mankarious, 151 F.3d 694, 706 (7th Cir. 1988), in discussing mail fraud and money laundering, "[I]t does not matter when all the acts constituting the predicate offense take place. It matters only that the predicate offense has produced proceeds in transactions distinct from those transactions allegedly constituting money laundering." That is because, like bankruptcy fraud, "a mail fraud scheme can create proceeds long before the mailing ever takes place." Id.

[11] Defendant cites United States v. Childs, 598 F.2d 169, 174 (D.C. Cir. 1979) for the proposition that subsequent acts must be "fairly recent" to be admissible under Rule 404(b). Mot. at 9, failing to acknowledge the gloss put on Childs by Latney, which specifically rejected defendant's contention, explaining that Childs held "merely that the more distant the time between two events the less likely the events are connected. That proposition does not decide a particular case, it does not establish a special rule and it was not meant to do any such thing." 108 F.3d at 449-450.

**B.**     <u>The Jury will be Able to Distinguish Between the Charges Easily.</u>

       The risk of unfair prejudice is further diminished when, as here, the jury will be able to distinguish between the joined charges easily and will be unlikely to confuse them with one another.  For instance, in <u>United States v. Lewis</u>, 626 F.2d 940, 945 (D.C. Cir. 1980), the court held that severance was unwarranted because "the dates of the offenses charged in Counts One and Two . . . were separated by two and one half months from the dates of Counts Three and Four," and therefore "evidence tending to prove the defendant's guilt of the First and Second Counts was clearly 'separable and distinct' from that of the Third and Fourth Counts."  Similarly here, the bankruptcy fraud counts are separated by several years from the health care fraud charges.  While the Porsche connects and binds the two schemes, defendant's bankruptcy filing is clearly separate and distinct from his Medicaid claims.  Notwithstanding defendant's conclusory assertion to the contrary, Mot. at 4, there exists little danger that the jury would "confuse or cumulate" evidence against defendant, or "confuse applicability of the government's evidence or the defendant's defenses."  <u>Id</u>.  <u>See also</u> <u>Drew v. United States</u>, 331 F.2d 85, 92 (D.C. Cir. 1964) (if it appears that the prosecutor "might be able to present the evidence in such a manner that the accused is not confounded in his defense and the jury will be able to treat the evidence relevant to

each charge separately and distinctly," severance is not necessary);[12] United States v. Brodie, 326

F. Supp.2d 83, 93 (D.D.C. 2004).

Defendant complains specifically of the inclusion of Count 66, in which he is

charged with concealing his ownership of six firearms from the Bankruptcy Court by answering

"no" to a direct question asking whether he owned any firearms.  Mot. at 12 n.12.  Defendant

incorrectly asserts that evidence relating to his ownership of firearms will cause him prejudice at

trial that must be remedied through severance.  The government has not, and will not allege at

trial that defendant possessed the firearms illegally.  The government seeks only to prove that

while defendant denied possessing firearms when asked directly about them on the bankruptcy

form, in fact he owned firearms and placed them prominently throughout his apartment.

Moreover, whatever prejudice would come from possession of the firearms would attach to any

trial in which Count 66 is included.  For example, if Count 66 were included in a severed trial of

Counts 62-72 as defendant requests, his ownership of firearms would then be ventilated in a

bankruptcy fraud and money laundering trial in which defendant still would not be charged with

illegal possession of firearms.  Insofar as defendant has not been charged with any weapons

---

[12]  Though defendant characterizes the facts of Drew as "strikingly similar" to the facts
here, Mot. at 7, Drew involved an attempt by the government to join robbery and attempted
robbery charges where misidentification was the defense.  The court held that the offenses were
dissimilar because the manner in which the crimes were committed did not "support a finding of
reasonable probability that the two offenses were committed by the same person, from which the
jury could be asked to infer that the person was [the defendant]."  331 F.2d at 91.  Here, the
defense certainly will not be misidentification.  Rather, unlike Drew, the arguments here will
focus on whether defendant possessed the requisite criminal intent to commit fraud, and the
government therefore has a heightened need for the 404(b) evidence at issue.  See infra.  Also, in
Drew, the crimes were not easy for the jury to distinguish between, since the robbery and
attempted robbery occurred within weeks of one another and were "repeatedly referred to as of
the same order" and "lumped [] together."  Id.  As discussed infra, here the health care fraud and
bankruptcy fraud, while connected, are easily distinguished from one another.

offenses, his fear that "the mere discussion of Mr. Henry possessing firearms in the District will affect [the jury's] ability to compartmentalize the evidence," id., would not be mitigated by severance. The incremental prejudice of including that charge in the overall trial is therefore minimal at most.

Counterbalancing the minimal incremental prejudice is the government's particular need for that evidence pursuant to Rule 404(b). As the D.C. Circuit has held, the government's need for 404(b) evidence is "correspondingly greater" in this case because "intent is the only real issue" and "is far harder to prove by extrinsic evidence than [defendant's] identity or the falsity of the statements." DeLoach, 654 F.2d at 769. At trial, the government expects to prove that while telling the Bankruptcy Court that he owned no firearms, defendant owned six firearms, including two valuable Winchester rifles that he hung in his bedroom closet wall adjacent to suits, ties, and belts, all of which were individually counted and listed in the bankruptcy petition. Defendant's brazen false statement in a filing with the Bankruptcy Court goes directly to the question whether he intended to submit false statements and claims to Medicaid. As defendant concedes that "[t]he touchstone as to whether or not the offenses are properly joined is whether the existence of the 'other crimes' would be admissible in separate trials," Mot. at 7, Count 66 is properly joined because it should be admissible in any trial pursuant to Rule 404(b).

## IV.    THE COURT'S INTEREST IN EFFICIENCY COMPELS HOLDING A SINGLE TRIAL ON THE INDICTED CHARGES.

Joinder of counts promotes judicial economy and efficiency by avoiding multiple trials. Zafiro, 506 U.S. at 539; Manner, 887 F.2d at 324. Judicial and prosecutorial economy

have been described as this court's "dominant concern," as joinder ensures that "a given transaction need only be proved once." Treadwell, 566 F. Supp. at 86. This concern weighs conclusively toward holding one trial in this case rather than two. First, as discussed above, since the government would seek to introduce the bankruptcy fraud allegations as 404(b) evidence in a separate health care fraud case and vice-versa, the transactions would have to be proven multiple times in separate trials. Also, Count 63 (Bankruptcy Fraud) specifically alleges that the bankruptcy fraud scheme encompassed concealing assets that had been obtained improperly through the health care fraud. Thus, even setting aside Rule 404(b) evidence, the health care fraud and the concomitant acquisition of the Porsche would have to be proven in a separate bankruptcy fraud trial.

The money laundering charges particularly underscore the difficulties and inefficiencies that would result from severing the health care fraud and bankruptcy fraud charges from one another. Count 69 alleges that defendant committed money laundering through the Porsche registration scheme, and it sets forth health care fraud as the specified unlawful activity. Count 70 alleges an identical charge, except that bankruptcy fraud is its specified unlawful activity. If Count 69 were included in a separate health care fraud trial, the government would have to prove the 2005 Porsche registration scheme in that trial. Evidence relating to the context of the bankruptcy filing would also have to be introduced at that trial, as the registration scheme cannot be understood fully in isolation. If the government were to prove both the Porsche registration scheme and the bankruptcy fraud with respect to the Porsche, it would make little sense to exclude the bankruptcy fraud charges from that trial.

If Count 69 were included instead in a separate bankruptcy fraud trial, as defendant maintains, Mot. at 4, the government would then have to prove that the Porsche constituted proceeds of the health care fraud, thereby necessitating proof of the health care fraud in a severed bankruptcy fraud trial. This one example demonstrates that however the charges would be severed, much of the severed evidence would still be presented in the trial of the remaining charges.

Finally, a stand-alone bankruptcy fraud trial would take almost as much time to complete as would a single trial on the indicted charges. The government believes that a separate bankruptcy fraud trial would involve over a dozen witnesses and 100 exhibits. It would last far longer than the "3-4 day trial, at most" that defendant claims. Mot. at 14. As discussed infra, the government also would intend to introduce evidence of the health care fraud in a severed bankruptcy fraud trial and vice-versa. Considering these factors, the Court's "dominant interest" in efficiency militates strongly in favor of holding one trial on all the indicted charges.

## CONCLUSION

Defendant's motion should be denied.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

/s/ ATTORNEY'S TYPED SIGNATURE
BY:    THOMAS E. ZENO, D.C. Bar. No. 348623
Assistant United States Attorney
Fraud & Public Corruption Section
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-6957

/s/ ATTORNEY'S TYPED SIGNATURE
BY:    GLEN DONATH, D.C. Bar No. 460582
Assistant United States Attorney
Fraud & Public Corruption Section
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-9555