UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NO. 1:06-00079-CKK |
| | : | |
| v. | : | |
| | : | |
| | : | |
| **RICARDO HENRY,** | : | |
| | : | |
| Defendant | : | |

GOVERNMENT'S
REPLY MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits this Reply Memorandum in Aid of Sentencing.

<u>The Adjustment for Obstruction of Justice Applies.</u>

The defendant's contention is meritless he is not the person who made harassing telephone calls to the daughters and mother of Agent Goldstein. The evidence[1] shows that the defendant knew Agent Goldstein was the lead agent when a search warrant was executed at the defendant's office on June 18, 2002. Less than three months later, during the Labor Day

---

[1] As the evidentiary basis for the enhancement, the government relies upon its filing on February 15, 2007, of the letter and attachment from Agent Goldstein; as well as
1) unsealed grand jury testimony of the defendant's sister dated October 23, 2002;
2) report of interview of the defendant's sister dated October 2, 2002;
3) report of interview of MLI dated September 9, 2002, and phone record;
4) report of interview of CLG dated September 9, 2002, and phone record;
5) report of interview of HSC dated September 9, 2002, and phone record;
6) unsealed grand jury testimony of FBI Special Agent Hill dated October 23, 2002;
7) report of Agent Goldstein dated 4 September, 2002; and
8) report of Agent Holt dated January 28, 2003.
   Counsel for the defendant has no objection to the government providing a copy of these materials to chambers, along with a copy to counsel, in advance of the sentencing hearing.

weekend, a man with a Caribbean accent like the defendant's called the daughters. The defendant's sister admitted under oath that she placed three-way calls at the defendant's request during the Labor Day weekend, and the telephone records show that the calls were made from the sister's phone to the phones of the daughters. Although the records of the call to Agent Goldstein's mother do not indicate the phone number from which originated it, the call occurred less than a week after the calls to the daughters. Because the messages to all three women were so similar and were made by a man with a Caribbean accent, the evidence supports the conclusion that the calls were made by the same person – the defendant. Additional corroboration of the defendant's identity comes from similar conduct in which the defendant left a harassing message on the answering machine of Mr. Dikoh on January 18, 2003. In his message, the defendant falsely alleged that an arrest warrant had been issued for Mr. Dikoh. On January 20, the defendant again called Mr. Dikoh and left a message stating that he knows who his friends are when the chips are down. Under these circumstances, there is an abundance of evidence, and far beyond the preponderance standard applicable at sentencing, that the defendant called Agent Goldstein's daughters and mother.

Similarly, the defendant's argument is meritless that the obstruction of justice adjustment requires uttering a threat specifically linked to the ongoing investigation. Rather, Application Note 3 to § 3C1.1 states, "the conduct to which this adjustment applies is not subject to precise definition." Instead, the Court should compare the conduct of the instant case to "the examples set forth in Application Notes 4 and 5" to determine whether the adjustment should be applied. Id. Among the examples of obstructive conduct provided in Application Note 4 are "threatening, intimidating, or otherwise unlawfully influencing a . . . witness . . . or attempting to do so."

Application Note 4(a). In this case, Agent Goldstein was the lead investigator and a potential government witness. It was completely predictable that, when he learned that his daughters and mother had been contacted by someone allegedly investigating him for taking bribes, Agent Goldstein's attention would be diverted away from the investigation. In the same way that a direct threat to a witness disrupts an investigation, the phone calls were designed to be, and in fact were, disruptive to the investigation. After hearing from his daughters and then his sobbing mother, Agent Goldstein "was concerned, obviously, about how this person got their home phone numbers, and, yeah he was quite upset." (Hill Tr. at 12). The memo written by Agent Goldstein the day after the calls to his daughters proves some disruption resulted immediately from the calls. Ultimately, the calls caused a severe disruption of the investigation when Agent Goldstein was removed as the lead investigator out of an abundance of caution lest there be an appearance of impropriety by allowing him to investigate someone who had harassed his family.

The defendant's conduct toward Mr. Dikoh also forced law enforcement officers to divert attention from the investigation. After receiving phone messages from the defendant which discussed the investigation, Mr. Dikoh contacted a law enforcement officer who reported that Mr. Dikoh "felt threaten (sic) and afraid" (Holt memo at 1). By forcing law enforcement officers to address the needs of a distressed potential witness, the defendant again disrupted the investigation. Accordingly, this conduct is an independent basis that the defendant should receive a two level adjustment for obstruction of justice.

The Court Should Not Grant a Departure for Defendant's Medical Condition.

The defendant is incorrect that the Bureau of Prisons cannot treat his condition of sickle cell anemia. A prisoner can be treated for sickle cell anemia while incarcerated in any of the

3

federal institutions. The Bureau of Prisons attends to prisoners with sickle cell anemia while they are incarcerated by making sure that they are well hydrated, have enough oxygen, and are taking their medication, as appropriate.[2] Therefore, this Court should join with other district courts which have been upheld on appeal for denying motions for downward departure due to sickle cell anemia. See <u>United States v. Waugh</u>, 189 Fed. Appx. 871 (11th Cir. 2006) (upholding district court's explanation that sickle cell anemia "is common in the federal prison system and that [defendant] could be properly cared for in prison"); <u>United States v. Little</u>, 65 Fed. Appx. 98 (8th Cir. 2003) (unpublished); <u>United States v. Nicholson</u>, 36 Fed. Appx. 151 (4th Cir. 2002). Similarly, in <u>United States v. Parker</u>, No. 00-CR-315, 2002 WL 32341775, at *4 (E.D. Pa. Jan. 4, 2002), the district court denied a motion for a downward departure where "[t]he Government argues, and [defendant] does not dispute, that the Bureau of Prisons is fully capable of providing the care that he needs, and does care for many inmates with sickle cell anemia."

<u>The Guidelines Adequately Consider All Relevant Factors.</u>

The defendant incorrectly reads <u>Rita v. United States</u>, ___ U.S. __, 127 S.Ct. 2456 (2007), for the proposition that "the Guidelines calculation specifically does not take into consideration relevant factors that the Court must consider under § 3553(a)." Defendant's Memo at 16. This simply is not accurate. The Supreme Court in <u>Rita</u> held that the Guidelines "seek to embody the §3553(a) considerations, both in principle and in practice." <u>Id.</u> at 2464.

> The upshot is that the sentencing statutes envision both the
> sentencing judge and the Commission as carrying out the same

---

[2] The government learned this information from Bryan Pownall, Health Services Division, Bureau of Prisons. Mr. Pownall can be contacted at 202-307-3055.

>basic § 3553(a) objectives, the one, at retail, the other at wholesale.
>Id. at 2463.

What the defendant dislikes about the Guidelines is the conclusion the Commission reached about the factors upon which he wishes to rely – age, education, physical condition, and employment record. Defendant's Memo at 17. The Guidelines describe each of these as "not ordinarily relevant." See §§ 5H1.1 - 5H1.5. And rightly so.

Every defendant can point to something about his age, education, physical condition, and employment history which distinguishes him from others. The normal differences which occur among individuals in these areas, however, should not be the basis for one judge to impose a lenient sentence whereas another judge would impose a harsh sentence. For instance, the defendant seeks leniency because he is in his mid-40s, college educated, and with an employment history despite his sickle cell anemia. Seen in another light, these same characteristics would justify a harsher sentence because the defendant is a mature individual who has had sufficient benefits and success in his life despite his illness to know that he does not need to earn money through criminal behavior. The Commission adopted the balanced approach that individual characteristics are not ordinarily sufficient to justify a departure. Because there is nothing extraordinary about the defendant's situation, there is no reason to depart from the Guidelines either at the "wholesale" or at the "retail" level.

<u>Defendant's bankruptcy fraud confirms that 27 months is the correct sentence.</u>

Whatever the value of the defendant's argument that flawed judgment lead him to commit health care fraud, the calculating and deceptive side of the defendant's nature is confirmed by his crime of bankruptcy fraud. Indisputably, the defendant acted intentionally

when, for instance, he concealed the Porsche by registering it with his brother at the start of the bankruptcy or when, for another instance, he withdrew $6,000 in cash on the day he signed the bankruptcy petition in which he acknowledged having only $20 of cash on hand. The seriousness of this intentionally fraudulent conduct is enhanced by the fact that the defendant knew he had been under investigation for several years before he committed the bankruptcy fraud. Rather than try to atone for his health care fraud by being scrupulously careful in the bankruptcy, the defendant committed more criminal conduct. Under these circumstances, the sentence imposed upon the defendant should have a deterrent effect and any damage to his reputation is directly attributable to his own conduct, hardly a mitigating factor. The defendant deserves nothing less than the sentence at the bottom of the applicable guideline range – 27 months incarceration.

      WHEREFORE, the government requests that the defendant be sentenced to 27 months incarceration.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

/s/ *Thomas E. Zeno*
_____
THOMAS E. ZENO
 D.C. Bar. No. 348623
Assistant United States Attorney
Fraud & Public Corruption Section
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-6957
Thomas.Zeno@usdoj.gov