**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **06-CR-79 (CKK)** |
| **RICARDO HENRY** | : | |

**DEFENDANT'S RESPONSE TO**
**GOVERNMENT'S REPLY MEMORANDUM IN AID OF SENTENCING**

Mr. Ricardo Henry, through undersigned counsel, respectfully submits the following in response to the Government's Reply Memorandum in Aid of Sentencing.

**I.      Objection to Obstruction of Justice Increase.**

The Court need not decide whether the government's evidence demonstrates that Mr. Henry made telephone calls to Agent Goldstein and his family because even if these calls were made by Mr. Henry, they do not constitute an attempt to obstruct justice.  The Probation Office applied the obstruction of justice increase based on a conclusion that Mr. Henry "attempted to threaten, intimidate, or otherwise influence a witness."  PSI at 22 (citing U.S.S.G. § 3C1.1, Note 4(a)).   In its Reply Memorandum, the government does not argue that the telephone calls at issue constituted an attempt to threaten, intimidate, or otherwise influence a witness.  Government's Reply Memorandum in Aid of Sentencing at 2-3.  Instead, the government argues that the calls "disrupted the investigation" by "diverting" the agent's attention, and asks the Court to analogize the calls to threats.   "Diverting the agent's attention" does not, however, compare to threats or intimation of a witness.

There is no evidence – or no reasonable inference – that the telephone calls at issue were designed to interfere with or chill the agent's investigation of Mr. Henry.   The described conduct

could not amount to obstruction of justice because there was no connection with the ongoing investigation – the conduct was not an attempt to interfere with or obstruct justice.  The government's suggestion that by harassing the agent Mr. Henry thought he could deter the investigation is irrational – clearly if the agent connected Mr. Henry to harassment of his family he would be more, not less, inclined to seek to investigate and prosecute Mr. Henry.  That the agent paid attention to the calls did not obstruction the investigation, nor did the government's decision to assign a new agent to the case.

Without citing any authority, the government argues that "the defendant's argument is meritless that the obstruction of justice adjustment requires uttering a threat specifically linked to an on going investigation."  Government's Reply Memorandum In Aid of Sentencing at 2.  The Guideline itself requires a link to the on going investigation.  The increase applies only if "the defendant willfully obstructed or impeded, or attempted to obstruct of impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction . . . ."  The telephone calls relating to Agent Goldstein were not intended to and did not obstruct the administration of justice with regard to this case.

Despite its own evidence to the contrary, the government continues to argue that telephone messages Mr. Henry left for an employee, Francis Dikoh, also support the application of the obstruction of justice enhancement.  In a memorandum filed on October 9, 2007, the government noted that they had interviewed Mr. Dikoh and that "the defendant *threatened* him by telling him falsely that an arrest warrant had issued for the employee, apparently in a vain effort to motivate the employee to return his phone calls."  Government's Revised Memorandum In Aid of Sentencing at 7 n.5 and 8 (emphasis added).  Undersigned counsel subsequently spoke

to Mr. Dikoh and, in a memorandum filed on November 2, 2007, reported that Mr. Dikoh stated

that he did not feel harassed by Mr. Henry and remains friendly with Mr. Henry today.  Objection

to Presentence Investigation Report, Motion for Downward Departure, and Memorandum in Aid

of Sentencing at 15.

The government's own exhibit (the report of Agent Holt dated January 28, 2003)

demonstrates that Mr. Henry made no threatening calls to Mr. Dikoh.  Agent Holt's report notes

that after reviewing all of the messages left for Mr. Dikoh by Mr. Henry, Agent Holt

"determined" that, although he sounded agitated that Mr. Dikoh did not return his calls,

Mr. Henry "left no threatening messages."  The report also does not allege that Mr. Dikoh ever

told Agent Holt that he felt threatened.  Instead, it was a patrol officer who was a "close personal

friend" of Mr. Dikoh who made this claim to Agent Holt – the report was written after Agent

Holt spoke to Mr. Dikoh and does not state that Mr. Dikoh told Agent Holt that he felt

threatened.

The government originally claimed that the message to Mr. Dikoh "reveals the

defendant's intent and motivation to obstruct the health care fraud investigation."  Government's

Revised Memorandum In Aid of Sentencing at 8.  Now, the government claims that "[b]y forcing

law enforcement officers to address the needs of a distressed potential witness, the defendant

again disrupted the investigation.  Accordingly, this conduct is an independent basis that the

defendant should receive a two level adjustment for obstruction of justice."  Government's Reply

Memorandum in Aid of Sentencing at 3.  Again, the government cites no cases in support of this

proposition.  Moreover, the facts do not support it.  Mr. Henry left messages for a friend, and the

government's own agent determined that the messages were not  threatening.  By no stretch of

the imagination could these calls be an effort to obstruct justice.  Even if causing the police to have to re-interview a witness constitutes a "disruption of the investigation" – a claim the government makes with no supporting authority – Mr. Henry could not have known (or intended) that leaving non-threatening messages would do so.

On its face, the obstruction of justice provision simply does not apply to the facts of this case, and the government has cited no authority to the contrary.

## II.    Downward Departure Due to Extraordinary Physical Ailment.

The government does not dispute that Mr. Henry's illness causes him great pain, and offers nothing to contradict his ex-wife's account of this pain or his doctor's concerns regarding the severity of his symptoms and potential damage to his organs.  Instead, the government argues that because the Bureau of Prisons can treat prisoners with sickle cell anemia, a departure is not warranted.  The government cites four cases in support of his argument.  Government's Reply Memorandum In Aid of Sentencing at 4 (citing United States v. Waugh, 189 Fed. Appx. 871 (11th Cir. 2006); United States v. Little, 65 Fed. Appx. 98 (8th Cir. 2003); United States v. Nicholson, 36 Fed. Appx. 151 (4th Cir. 2002); United States v. Parker, 2002 WL 32341775 (E.D. Pa. Jan. 4, 2002)).  None of these cases describe the severity of the defendant's symptoms or the evidence presented regarding the defendant's illness.  Thus, none of these cases provide a useful comparison.

The severity of sickle cell symptoms vary from patient to patient.  Mr. Henry, through counsel, has made a factual proffer regarding the severity of his symptoms and the hardship that incarceration would cause.  The government has offered nothing to rebut this, other than vague assurances that the Bureau of Prisons will provide treatment.   As confirmed by his doctor,

incarceration could cause Mr. Henry's symptoms to be more severe and could cause greater

damage to his organs.  The government has not represented that the Bureau of Prisons would be

willing to provide Mr. Henry with the strong narcotics he is now prescribed to manage his pain.

Without such medication, incarceration would be a exceedingly harsh punishment – punishment

that without adequate care could lead to permanent damage to Mr. Henry's organs.  Because of

this extraordinary medical condition, in this case, a downward departure is warranted.

### III.    Guidelines Fail to Adequately Consider All Relevant Factors.

The government argues that Rita v. United States, __ U.S. __, 127 S.Ct. 2456 (2007) does

not stand for the proposition that the Guidelines fail to take into consideration relevant factors

that the Court must consider under § 3553.  Government's Reply Memorandum In Aid of

Sentencing at 4-5.  The government then recognizes that the Guidelines actually fail to consider

certain 3553(a) factors because they are – in the view of the Sentencing Commission – "not

ordinarily relevant."  Id.  The government argues that the Guidelines were correct in finding that

certain defendant characteristics are not relevant.  Id.  Section 3553, however, directs the Court to

consider the individual characteristics and history of the defendant.  Moreover, the Guidelines's

failure in this respect is a consideration that the Supreme Court, in Rita, specifically noted district

courts may consider when determining an appropriate sentence.  See Rita, 127 S.Ct. at 2465

(sentencing judge "may hear arguments by prosecution or defense that the Guidelines sentence

should not apply . . . perhaps because the Guidelines sentence itself fails properly to reflect

§ 3553(a) considerations").  Because defendant in Rita did not raise the issue at sentencing, the

Court in Rita did not reach the argument – raised here – that a Guidelines sentence "is not

reasonable under § 3553(a) because it expressly declines to consider various personal

characteristics of the defendant, such as physical condition, employment record, and military service, under the view that these factors are 'not ordinarily relevant.'" <u>Id</u>. at 2470.

Here, a Guidelines sentence would be unreasonable because the range was determined without regard to important factors, including Mr. Henry's age, health, education and employment record. This Court should consider these factors, particularly Mr. Henry's illness (even if that illness does not rise to the level of an extraordinary physical impairment requiring a departure), because they all bear on his history and characteristics. As his sentencing memorandum sets forth, the Guidelines recommend a sentence that is greater than necessary to comply with the purposes of sentencing given Mr. Henry's age, education, illness and employment record. This Court should not reflexively defer to the Guidelines in this case.

## <u>Conclusion</u>

Since his release in this case more than nineteen months ago, Mr. Henry has maintained full compliance with all of the conditions of his release, including electronic monitoring. This is his first criminal conviction, and he has demonstrated that he deserves a second chance. Particularly given the state of his health, a sentence of incarceration is not appropriate. For all of the reasons set forth above, the reasons previously submitted, and such other reasons as may be presented at the sentencing hearing, the Court should impose a sentence that substitutes home confinement for any period of incarceration.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

_____
MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C.  20004
(202) 208-7500 ext. 109